## JOHN DENIE'S SONS CO. v. 638 TIRE & VULCANIZING CO.

Western Section.   Jan. 14, 1927.

No petition for Certiorari was filed.

1. **Contracts.   Pleading.   Petition held sufficient.**
   In an action to recover damages caused by defendant's failure to take out insurance on a rented motor truck, held the complainant bill alleged with sufficient clearness the agreement complainant was relying upon.

2. **Contracts.   Damages defined.**
   Damages for breaches of contracts are such as are incidental to or directly caused by the breach and may reasonably be supposed to have entered into the contemplation of the parties.   The contract itself must give the measure of damages.

3. **Damages.   Necessary attorney fees and stenographer hire to defend a law suit held a proper element of damages in an action to recover for failure to take out liability insurance.**
   Where the defendant rented to plaintiff certain motor trucks and contracted to take out liability insurance to cover losses by damages to property or injuries to persons and the policies taken out did not cover an accident with one of the trucks and the plaintiff was compelled to expend money retaining attorney and stenographer to defend suits filed against him, held that such expenses were a proper element of damages and could be recovered in an action for breach of the contract.

Appeal from Chancery Court, Shelby County; Hon. D. W. De Haven, Chancellor.

Affirmed.

Winchester & Busby, of Memphis, for appellant.

D. B. Puryear, of Memphis, for appellee.

OWEN, J. The defendant has appealed from a decree rendered against it for $1189.27 on June 14, 1926, in the Chancery Court of Shelby county. Both the complainant and the defendant are Tennessee corporations, engaged in business in Memphis, Tennessee. It appears that the defendant is engaged in the automobile tire business and also is the owner and operator of a number of automobile trucks. It rents or leases these trucks for hire. The complainant is engaged in selling building material for the erection of houses. The bill alleged that about the first day of October 1921 the complainant leased or rented three automobile trucks from the defendant for a certain price and that the defendant, through its general manager agreed with complainant's general manager that these trucks were all insured and would be kept insured against full liability as to any accident or claim for damages that might arise by the operation of either of the trucks, and that it was agreed that the trucks were to be driven and operated by employees of the complainant and to be used in hauling building material and making delivery in and about the City of Memphis. Relying upon this agreement complainant did not take out any insurance on said trucks. Complainant alleged that shortly after it rented said trucks one of its drivers operating one of the trucks leased from the defendant met with an unfortunate accident, the result of which, a lad by the name of Albert Hattendorf, Jr., was seriously injured. The father of this boy as next friend and in his own right instituted two suits for alleged damages to the boy, for loss of time, etc. Complainant called upon the defendant to defend these suits according to its alleged agreement. We find two letters in the transcript, in which the facts relative to the damage suits by Hattendorf are fully set out, and all the facts pertaining there to, and written demand was made upon the defendant to defend the two law suits for damages pending in the Circuit Court of Shelby county.

The defendant refused to defend these suits, but referred the matter to the Victor Indemnity Company, it being insisted by the defendant that the Victor Indemnity Company had written insurance upon defendant's trucks. It appears that the policy issued by the Victor Indemnity Company would not protect a truck of the defendant unless it was being operated by defendant's employee or agent. The complainant expended $1122.90, defending said two law suits in attorneys fees, stenographic expenses and paying the expenses of material witnesses. There was a verdict in favor of defendant to those two damage suits, being the complainant herein. The suits

were not appealed. This bill was filed for the purpose of collecting the amount that the complainant had paid in the defense of said two law suits upon the alleged contract between the complainant and defendant. Defendant filed a demurrer to this bill, which demurrer was overruled, with leave to rely upon it in its answer, which was done the grounds of the demurrer being that (1), if such a contract was made as alleged by complainant, it was a matter entirely out of the scope of defendant's business and therefore void; (2) that the contract would have to be in writing; (3) if there was any violation of the contract complainant could not recover for attorneys fees and cost of defending law suits, which law suits were without merit; (4) the allegations of the bill in regard to the contract are too indefinite and uncertain.

In the answer, in addition to the defenses made by the demurrer the defendant denied all liability; denied any contract was made agreeing that the trucks were insured, and insisted it was under no obligation to defend the damage suits brought by Hattendorf against complainant; and denied that it was necessary for complainant to incur the expenses alleged to have been incurred in defending said two damage suits.

With the issues thus thus formed, complainant took the depositions of C. E. Chapleau, who was the manager of the defendant company at the time the contract was made in regard to the trucks, and J. A. Costigan, the manager of complainant corporation who made the contract for complainant with the defendant through Chapleau; Clarence Devoy, who was the vice-president of complainant, and who employed counsel to defend the damage suits.

The defendant took the deposition of Walter Hunter, president of the defendant company. The cause came on to be heard before Chancellor DeHaven, who sustained complainants bill and found the following facts:

"(1) The court finds that the complainant and defendant entered during the early fall of 1921 into a contract for the rental of trucks owned by the defendant and rented by the complainant.

(2) The defendant agreed and contracted with the complainant that the defendant would carry insurance on said trucks to protect the complainant against loss growing out of damages for the injuries to persons or property;

(3) The defendant failed or refused to carry insurance that would protect the complainant against loss to the complainant for damages to persons or property.

(4) The complainant, while using the said trucks, ran into and injured Albert Hattendorf, Jr., and by reason of said accident, the complainants were sued in the Circuit Court of Shelby county, Tennessee, and the defense of said suits was tendered to the defend-

ants, who refused to defend. The complainants were forced to employ attorneys who successfully defended this litigation and in so doing, did incur an expense of eleven hundred twenty-two and ninety one-hundredths dollars ($1,122.90), of which one thousand dollars was for attorneys fees and one hundred twenty-two and ninety one-hundredths dollars (($122.90), were expenses incurred in the litigation.''

The defendant excepted to the decree against it, prayed and was granted an appeal to this court, perfected the same, and has assigned five errors.

The first error is, that the court erred in overruling defendant's demurrer.

The second is, the Court erred in finding as a fact the defendant agreed and contracted with the complainant that the defendant would carry insurance on said trucks to protect the complainant against loss growing out of damages for injury to persons or property.

The third is, the Court erred in decreeing any recovery against defendant.

The fourth is, that the amount claimed by complainant is no part of the expenses or expenditures included in the finding of facts of the Chancellor who held that defendant agreed to protect complainant for any loss growing out of damages for injuries to persons or property.

The fifth is, that the Court erred in finding the issues in favor of the complainant.

We are of opinion that the bill alleged with sufficient clearness the agreement complainant was relying upon, and which it was insisted or alleged the defendant and the complainant had made.

The witness Chapleau, former manager of the defendant, and Costigan, manager of the complainant who entered into the agreement as to the renting and insuring of the trucks agree as to what was said and done when the contract was made. We quote from Mr. Chapleau's testimony, as follows:

''Q. Mr. Chapleau, in the year 1921, with what Company were you connected and what was your official position? A. With the 638 Tire & Vulcanizing Co., as General Manager. Q. Do you recall, during the early fall of 1921 renting any—on behalf of your Company, renting any trucks? A. Yes, sir. Q. To John A. Denie's Sons? A. Yes, sir. Q. Just state, Mr. Chapleau, the substance of your agreement with John A. Denie's Sons Company or the representative of John A. Denie's Sons Company with whom these trucks were rented and with particular reference to the carrying of liability insurance on the same? A. We had been renting them a truck, off and on for sometime and they wanted additional trucks and the questions were brought up by Mr. Costigan as to whether

these other trucks were covered by insurance. I assured him that they were, as policies had been taken out on these trucks for the purpose of our own use and the public hauling. It was my understanding that—our interpretation of the insurance policy that we were thoroughly covered for property damage and liability, and that anyone to whom we rented trucks were likewise covered. Q. State whether or not you were the only representative of the 638 Tire & Vulcanizing Company, who handled this matter for the defendant Company? A. Yes, sir; I was the only one. Q. Mr. Chapleau, do you recall just how the subject of insurance on the trucks was brought up? A. The two additional trucks that they rented had not been used for that purpose before and Mr. Costigan stated that he wanted to be sure that these trucks were covered by insurance that would cover all parties concerned. Q. Did you, or not know at that time, that the trucks would be operated by the employees of the John A. Denie's Sons Company and not by the 638 Tire & Vulcanizing Company's drivers: A. Yes; I knew that they would be operated by John A. Denie's Sons Company's drivers.

. . . . . .

Q. Did you then make any effort to carry out this agreement and procure this insurance for the protection of John A. Denie's Sons Company on behalf of the 638 Tire & Vulcanizing Company; and, if so, what effort did you make? A. Before the trucks were rented the insurance policies were written, which, from my understanding, would cover the 638 Company or anyone to whom we might rent the trucks, as the policies specified for our own use and public hauling. Q. Now, just what was your understanding with reference to the coverage of John A. Denie's Sons Company of these policies at the time you placed the insurance with the insurance company? A. It was my understanding that the policies covered ourselves or anyone to whom we rented the trucks or hauled material for, to the extent of property damage and liability. Q. And it had been with respect to liability for claim on property damage and personal injuries against John A. Denie's Sons Company that Mr. Costigan had spoken to you at the time of your first conversation? A. Yes, sir.

. . . . . .

Q. Do you recall the date that you served your connection with the 638 Tire Company? A. It was, I think, in, I think, July 1st, 1922. Q. I will ask you, Mr. Chapleau, if you wouldn't have assumed for the 638 Tire & Vulcanizing Company the defense of this suit on behalf of John A. Denie's Company, had you been in control of the Company at the time of the trial of this lawsuit? A. Yes, sir.

. . . . . .

Q. Did you, as a representative of the Company, during the time you were with them ever disclaim to John A. Denie's Sons Company or any representative of John A. Denie's Company, liability on behalf of your Company to carry out the terms of your agreement with Mr. Costigan and see that they were protected against law suits for any personal injuries which were inflicted by the operation of these trucks? A. No; I did not. Q. Mr. Chapleau, you stated that you were General Manager of the defendant Company during this time? A. Yes, sir. Q. You had authority, didn't you, from your Company to rent these trucks and make any contract relative thereto that you saw fit and property? A. Yes, sir. Q. Was your authority in that respect ever in any way questioned? A. No. Q. Do you recall the time that this Hattendorf accident occurred, or do you recall that there was such an accident? A. Yes; I made out the report on it. Q. Were you apprised of that by any one for the defendant John A. Denie's Company? A. Yes, sir. Q. Now, you make the report out and sent it in to your Company? A. Yes, sir.

. . . . . .

Q. Were you, or not, later advised by the Insurance Company that there was some question as to the coverage of the John A. Denie's Sons Company under the policy? A. Yes, sir. Q. Was this, or not, your first information that there was any doubt as to full protection of John A. Denie's Sons Company under your policy? A. Yes, they claimed they were not liable because the trucks were not operated by a driver employed by the 538 Tire Company; that was my first knowledge that the parties to whom we rented trucks were not covered, in the event they operated the trucks with their own drivers. Q. But, of course, you had understood at the time the trucks were rented to Mr. Costigan that they would be operated by Denie's drivers? A. Yes, sir.''

We are of opinion that the evidence sustains the finding of fact as set forth by the Chancellor, which we have heretofore set out in this opinion, and the first and second assignments of error are overruled.

The other three assignments of error will be treated together. Taking it as an established fact that the agreement was made between the complainant and defendant as set forth in the testimony of Chapleau and Costigan, and as found by the Chancellor and approved by this court, was the employment of counsel and stenographer and paying the expenses of witnesses who had to attend court to defend the two damage suits, proper damages for which complainant would be entitled to recover. It appears that in one of the damage suits the plaintiff sought to recover $20,000 for the

personal injuries of the boy and the father undertook to recover $5000 for the loss of time, expenses, etc. The complainant paid a firm of lawyers $1000 to defend these two law suits, and the remainder, to-wit: $122.90 includes the expenses of a stenographer at the trial and the expense of a material witness who had to be brought from St. Louis to Memphis. There is no attack made upon the reasonableness of these various expenses.

It is the contention of appellant that the contract relied upon, stating that the trucks were insured, is too vague and indefinite, and that it is a matter of common knowledge that insurance companies issue policies of an indefinite variety; that some insure for liability for personal injury while others deal only with property damages; while others will issue against damages both to persons and property. That some policies fix a limit of $5000, while other companies will carry insurance as high as $20,000; that some policies only cover theft or fire.

The appellee insists that the words "liability insurance" as applied to automobiles, to protect the assured against loss by damage to property or injury to persons, includes the expense incident to defense of a law suit growing out of such damage, or injury, and that the failure of the appellant to carry out its agreement to procure liability insurance to protect the appellee on said truck was the direct and proximate cause of the loss sustained by appellee in making it necessary for appellee to incur the expense here sued for in the defense of the tort action. Therefore, the amount of money expended by the appellee in defending the law suit in the Circuit Court for the loss caused to appellee as a result of appellant's breach to carry liability insurance on said truck is a proper element of damage for the breach of the appellant's contract to procure liability insurance.

In support of this contention appellees cite the case of Ruth A. Collins v. East Tennessee, Virginia & Georgia Railroad Company, 56 Tenn., page 842, headnote 10, which states the rule as to interpretation of damages and is as follows: "Damages" is the indemnity recoverable by a person who has sustained an injury, either in his person, property, or relative rights, through the act or default of another. To recover, the loss must be the natural and proximate consequence of the wrong."

The rule as to actual and compensatory damages for the breach of a contract is stated in the case of the State of Tennessee v. Ward & Briggs, 9 Heisk., page 80, headnote 8, as follows:

"Damages for breaches of contracts are such as are incidental to or directly caused by the breach and may reasonably be supposed to have entered into the contemplation of the parties. The contract itself must give the measure of damages."

In Volume 17 of Corpus Juris, under the subject of Damages, is this statement of the law at page 914: ''The measure of a recovery for expenses incurred by plaintiff by reason of defendant's wrongful act is a reasonable sum therefor.''

Where a contract is made between two parties in which it is agreed that one shall procure insurance to protect the other's property, or to protect the other from loss sustained through liability for damage to property or injury to persons, the failure to procure such insurance renders the party failing to do so liable for any damages sustained by such failure to procure said insurance. Appellee, therefore, contends that appellant's failure to procure liability insurance on said automobile to protect the appellee in the operation of said automobile against loss by damages to property or injury to person renders the appellant liable to the appellee for any loss appellee suffered by appellant's failure to obtain said insurance.

In support of this contention appellee cites the case of Deming v. Merchants' Cotton Press Co., 90 Tenn., 306: ''A cotton compress company which receives cotton for compression and storage under a contract, either express or implied, from usage, to insure the same to its full value for the owners' benefit, is liable to the latter for the full value in case it is destroyed by fire while, through the company's negligence, it remains uninsured, although the company is free from negligence in caring for it.''

In the case of Ford v. Stevens Motor Company, 220 S. W., 980, decided by the Supreme Court of Missouri, it was held that the seller of an automobile was liable to the purchaser for his failure to carry liability insurance to protect the purchaser while temporarily using another car and pending the delivery of his new car when said seller had agreed to procure liability insurance to protect the purchaser against loss to property, or injuries to persons, and in a suit by the purchaser for a breach of contract to carry such insurance where the purchaser had sustained loss, it was held the purchaser was entitled to recover the amount of a judgment recovered against him in another suit for damages.

In the case of Anna Jacobi v. Jacob A. Lewitz, 227 Ill., Appeals, 274, it was held that where the defendant agreed to insure the fur coat belonging to the complainant to the value of $500, his failure to purchase such insurance rendered the defendant liable to the complainant in the sum of $500, the amount agreed upon for the loss of said coat.

After a careful consideration of all the assignments of error, we are of opinion that there is no error in the judgment of the lower court; that the record sustains the finding of facts by the Chancellor, and the law supports his judgment.

The assignments of error are overruled and disallowed, the judgment of the lower court is affirmed. The complainant will recover of the defendant and surety on appeal bond the judgment rendered in the lower court, together with interest thereon, and all of the cost of the cause, for which execution will issue.

Heiskell and Senter, JJ., concur.