# CENTRAL NATIONAL INSURANCE CO. v. ERNEST C. HORNE. —326 S. W. (2d) 141.

Middle Section. March 27, 1959.

Certiorari denied by Supreme Court June 5, 1959.

712

Gracey, Buck, Maddin & Cowan, Nashville, for plaintiff in error.

Ward DeWitt, Jr., Nashville, for defendant in error.

## I.

## The Case.

SHRIVER, J. This is a suit by an insurance company against its own insured seeking recovery of the amount paid by it under a policy of automobile collision insurance. The theory of plaintiff is that it suffered damages in the amount sued for because the defendant failed to cooperate in the prosecution of a suit brought in his name for the company's benefit to recover from a third party the amount paid by the company to repair the defendant's car.

The case was tried in the General Sessions Court where plaintiff's suit was dismissed. On appeal to the Circuit Court there was a like result, whereupon, the plaintiff, Insurance Company, prayed and perfected its appeal to this Court and has assigned errors.

## II.

### The Facts.

The bill of exceptions is in narrative form and shows the following essential facts:

In the Summer of 1955, the defendant, Ernest C. Horne, was involved in an automobile accident in Glasgow, Kentucky, when his car collided with another belonging to one Robert Bunch.

His automobile was covered by a collision insurance policy issued by the plaintiff, Central National Insurance Company of Omaha. The policy among other things, provided that the company would "Pay for direct and accidental loss of or damage to the automobile_____ caused by its collision with another object_____"

Horne filed a claim against the insurance company for damage to his car, and in due course the company paid $896.72 which was the cost of repairs, less $100 deductible. In this connection Horne signed a "Proof of Loss", "Loan Receipt" and "Subrogation Agreement".

Under the aforesaid subrogation agreement the insurance company in September 1955 instituted suit in Horne's name, in Glasgow, Kentucky, against Bobby Gene Bunch and Robert Bunch, the driver and owner, respectively, of the other car involved with defendant in

the collision. The owner, Robert Bunch, filed a counter-suit against Horne for $450 damages.

At the time the subrogation suit was brought, defendant was living in Glasgow, Kentucky, but before the case was set for trial he was transferred to Nashville, Tennessee, and before leaving Glasgow he advised plaintiff's attorney, Mr. Garnett, of his Nashville address.

According to the defendant's testimony this was the only time he ever saw Mr. Garnett during the pendency of the subrogation case.

As to what occurred thereafter there is some conflict in the evidence. According to Mr. Garnett the subrogation case was set for trial on five different occasions. He testified that the first three times it was set for trial, to-wit, Jan., April, and September, 1956, he wrote letters to defendant at his Glasgow address, advising him to be present in court. Horne did not appear for trial and denies that he received these letters.

The case was set for trial again on January 17, 1957 and was continued to April 8, 1957 when it was dismissed for want of prosecution.

The testimony is that on each of these two latter instances Horne was called by representatives of the insurance company five days and three days, respectively, before the trial dates and told to be present. Horne testified that the reason he did not attend trial on January 17, 1957 and April 8, 1957 was that he had made prior business commitments; that, as a debit man with the National Life and Accident Insurance Company he was required to set up his appointments with the prospective

customers in advance, and that he had made these commitments before he was notified of the dates of trial last above mentioned.

He stated that he was ready and willing to attend trial upon proper notice.

It is shown that no effort was made to take Horne's deposition nor was any subpoena ever issued for him.

Following the dismissal of the subrogation case in April 1957 the company filed the instant suit against Horne seeking to recover from him the sum of money paid out by it for the repair of his automobile, which, as hereinabove stated, amounted to $896.72, and, in addition, plaintiff seeks recovery of $61.75 paid in court costs in the subrogation suit, or a total of $958.47.

As stated at the outset, the cause was dismissed in General Sessions Court and in the Circuit Court where the trial Judge filed a memorandum opinion which was ordered made a part of the record.

## III.

### Assignments of Error.

Plaintiff has assigned the following error:

"The plaintiff assigns as error the failure on the part of the trial Court to find damages in favor of the plaintiff in view of the fact that the Court has found, and there is no appeal therefrom, that the defendant did breach the contract between the plaintiff and defendant."

Although the defendant did not appeal, he has assigned error as follows:

"Defendant assigns as error the finding of the trial Judge that the defendant failed as a matter of fact to cooperate in the prosecution of the suit filed in his name by the plaintiff to recover damages to his car."

## IV.

The learned trial Judge filed the following memorandum opinion which is made a part of the record:

"Item 1—The Court finds that although the evidence is in conflict, the preponderance of all the evidence sustains plaintiff's contention that the defendant failed as a matter of fact to cooperate in the prosecution of the suit filed in his name by the plaintiff to recover damages to his car.

"Item 2—The finding of fact as indicated under Item 1, however, does not in this particular case, render the defendant liable at law for damages for alleged breach of contract under the Loan Receipt D. Ex. 2, because—

"a. The Loan Receipt was not a part of the original insurance policy or clearly incorporated by reference as a condition precedent to the issuance of the policy. (Ex. 1.)

"b. There was no legal or valid consideration for the execution of the said Loan Receipt.

"c. There was no proof that the insured knew or should have known that the payment of a claim under the policy would be in the nature of a loan.

"Item 3—The finding of fact in Item 1 does not render the defendant liable for a breach of contract

under the original policy—Condition 7, Ex. 1, because—

"a. It has failed to prove damages as required by the law of the case.

"b. The policy is silent as to any damages liquidated or unliquidated, for any alleged breach.

"c. In the absence of any provision for liquidated damages in the policy for an alleged breach, the burden is on the plaintiff to prove them. This the Court finds the plaintiff has failed to do and the award of any damages would be based on speculation. The Loan Receipt provided that the loan is to be repaid only in the event and to the extent of any recovery (See Ex. 2). There was no recovery.

"While there was evidence that the defendant Horne might have recovered in his suit, there was also evidence that a cross-action was filed against him.

"d. It will be noted from the proof that if the Court should render judgment as insisted by the plaintiff, the damages would exactly equal the amount paid by the company on the claim under the proof of loss and the insurance company would also keep possession of the premium paid under the policy, there being no tender of the amount so paid. As the Court sees it, the legal effect of this would be to write into the insurance policy that in event Condition 7 was breached, the liquidated damages would be the amount paid on any claim. This same result would be accomplished if the loan receipt served as a basis for recovery. The Court can not so hold and

it would be contrary to public policy. It is obvious if such unauthorized procedure is not followed in this case, then the award of any damages otherwise would be, under the proof in this case, highly speculative and should not be allowed.

"For the foregoing reasons, the plaintiff's suit should be dismissed with costs against it.

"Byrd Douglas /s/

BYRD DOUGLAS, JUDGE

"Sept. 9, 1958"

The specimen policy attached to the bill of exceptions as being identical with the original contains the following pertinent provisions:

*"Coverage B—Collision or Upset.*

"To pay for direct and accidental loss of or damages to the automobile, hereinafter called loss, caused by collision of the automobile with another object or by upset of the automobile.

\* \* \* \* \* \*

"8. *Assistance and Cooperation of the insured.*

"The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense.

"9. *Subrogation.*

"In the event of any payment under this policy, the company shall be subrogated to all the insured's rights or recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."

The "Proof and Release" document, which is separate from the policy, provides on the first page thereof, under the title "Automobile Proof of Loss", that in further consideration of the payment of the above stated amount ($896.72) by the insurance company the undersigned agrees that the company shall be vested with all the rights and causes of action the undersigned has against any person whomsoever for damages to the injured property. And further provides that the insured agrees to execute any documents required by the company in prosecution of the said rights and that the company is authorized and empowered to sue, compromise and settle in the undersigned's name.

On the back of said document entitled, "Loan Receipt", there are several involved provisions which, on their face, appear to be in conflict with the provision hereinabove, entitled "Automobile Proof of Loss", which recites the consideration for the payment of the amount in question and is, in no sense, in the nature of a loan.

Then following the aforesaid "Loan Receipt" document is an agreement entitled "Subrogation Agreement" which recites that the amount shown on the top of the reverse side thereof is in full settlement of all claims and

demands for loss and damage on the date of loss, identified as item 2 on the reverse side thereof, and recites that the undersigned insured assigns each and every claim and demand against any other person or property arising out of the loss or damage to the insurance company, and authorizes and empowers the company to sign, execute or attest instruments of claim, as summons, complaint, pleadings, covenants, releases, stipulations in the name of the insured, in any amount in any way necessary or convenient to the prosecution of said claim. Said provision concludes as follows:

"The company is to receive any recovery thereon and to retain the same to the extent of the money paid as aforesaid, the balance to be paid to the assured."

 As hereinabove observed, since the essential provision of the policy is the insurance provision whereby the company agrees to pay for damage by collision to the insured's automobile, we think the so-called loan agreement may be regarded as being in conflict with the terms of the policy. Said loan agreement seems to negative the idea of the company's unqualified promise to pay for the damage caused by collision or upset.

Item 8 entitled "Assistance and Cooperation of the Insured", hereinabove quoted, is in the policy itself and a reading of said policy indicates that this provision has to do with cooperation with the company on the part of the insured at trials of cases brought against the insured. He agrees to assist in effecting settlements, in securing and giving evidence and in obtaining the attendance of witnesses in the conduct of such suits. This, apparently,

does not contemplate the situation that has arisen in the case at bar.

No. 9, hereinabove entitled "Subrogation" provides that the company shall be subrogated to the insured's rights of recovery against any person, and provides that the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. However, the subrogation agreement signed after the loss, and on which the company apparently intended to rely, and on which they must rely, is an assignment of the claim against the other person arising from and connected with the loss, to the extent of the amount paid out. It authorizes the attorney or representative of the company to sign, execute or attest any instrument or claim, any summons, pleading, release or stipulation in the name of the insured in any way necessary or convenient to the prosecution of the claim.

The record shows that the defendant, insured, did comply with this agreement.

But assuming that under the terms of the policy the insured was obligated to cooperate with the insurance company in its subrogation suit against the third party, does the proof herein make out a case of liability against the defendant by reason of his alleged failure to cooperate, and, if so, has the plaintiff carried the burden of proving damages by reason of the conduct of the defendant, in view of the fact that none of the written documents relied on by plaintiff have any provision as to liquidated damages?

We are impressed that the facts shown by the record, particularly in the letters exchanged between attorneys and agents of the company, which are exhibited in the

record, indicate that there was no refusal on the part of the defendant to attend trial and to cooperate in the prosecution of the subrogation case. On the other hand, they show some lack of diligence on the part of plaintiff as well as defendant and indicate some excuse on the part of the defendant for his failure to attend trial in Glasgow, Kentucky.

As suggested hereinabove, the insurance policy issued to the defendant provides that the insurance company will pay for accidental loss of or damage to the automobile of defendant caused by collision with another object. Thus, the company was obligated to pay for the damage to the insured's car, the consideration being the payment of the premium which, it is admitted, was paid.

The loan receipt seems to attempt to classify the money paid by the company for the repairs to defendant's car as a "loan". The contract itself was not that the plaintiff would lend the defendant money to pay for his damage if and when it occurred. It is noted, also, that said "Loan Receipt" provides that the "Loan" is repayable only in the event and to the extent of any net recovery that the insured might make from a third party liable for damage to the automobile. Admittedly, no recovery was made from the third party, hence, it would seem that this provision of the "Loan Receipt" did not take effect so as to render the defendant liable for repayment.

As is pointed out by the trial Judge, the insurance policy as well as the subrogation and loan agreement are silent as to any damages, either liquidated or unliquidated, for a breach thereof, and, therefore, the award of damages would be based on speculation. The only proof

offered as to the amount of damages were the checks in payment of the bill for repairs to the automobile and in payment of court costs for the suit that was dismissed. Thus, if damages were awarded as claimed by plaintiff, it would not only recover all the money it paid pursuant to the provisions of its policy, but would retain the premium paid by the defendant, since there was no tender of this premium. The action cannot be regarded, therefore, as one to rescind the contract and to restore the parties to the status occupied by them at the outset.

In addition to all of this, it is to be noted that there is no proof in this record to the effect that, if the subrogation suit had been prosecuted to a conclusion, there would have been a recovery from the third party. For these reasons the Circuit Judge found that an award of damages would necessarily involve speculation and conjecture.

In the old case of Walker & Langford v. Ellis & Moore, 33 Tenn. 515, it was held that in actions of contract to recover damages for breach, generally speaking, the damages are limited to the natural and proximate consequences of the breach complained of; and damages remotely or consequentially resulting therefrom, or merely speculative damages, cannot be recovered.

It was also said that in action for a breach of contract the injured party is bound to use proper means and efforts to protect himself from loss and can charge the other party only for such damages as, by reasonable endeavors and expense, he could not prevent.

In the case at bar, while we might assume that the presence of the defendant herein was necessary in order to proceed with the case in question, the record does not

show how many, if any, other witnesses to the same facts and circumstances known by the defendant, were available to plaintiff in the prosecution of the subrogation suit. More than this it is not shown that the plaintiff took any steps to preserve the insured's testimony by taking his deposition. This might have been done in view of the fact that he had moved from Glasgow to Nashville, and it was fair to assume that his presence at the time of trial was not to be considered as a reasonable certainty, particularly after his failure to appear the first two or three times the case was set.

In the case of John Denie's Sons Co. v. 638 Tire & Vulcanizing Co., 3 Tenn. App. 609, it was said that damages for breaches of contracts are such as are incidental to or directly caused by the breach and may reasonably be supposed to have entered into the contemplation of the parties. *"The contract itself must give the measure of damages"*. The court quoting the above language from State of Tenn. v. Ward & Briggs, 56 Tenn. 100.

Also see 15 Am. Jur. Damages sec. 12.

In 15 Am. Jur. "Damages", sec. 51, it is stated:

"The rule that damages which are uncertain and too remote cannot be recovered only applies to such damages as are not the certain result of the breach and not to such as are the certain results but uncertain in amount." Citing a long line of cases from numerous jurisdictions.

In Morristown Lincoln-Mercury, Inc. v. Roy N. Lotspeich Publishing Company, 42 Tenn. App. 92, 298 S. W. (2d) 788 (certiorari denied by Supreme Court Dec. 7,

1956), an automobile dealer sought damages against a newspaper because it breached a contract to publish certain advertising matter relating to the sale of cars belonging to the dealer. The paper refused to publish the advertising and it was contended by the plaintiff that this resulted in a loss of profits. Plaintiff testified over defendant's objection that had the advertising been run in the newspaper, he would have made a profit of from Four to Five Hundred Dollars on each automobile.

The Court of Appeals reversed the judgment holding that this was mere speculation and that no actual damage had been proved. The court quoted from 15 Am. Jur. Damages sec. 150 to the effect that in order to recover for loss of profits they must be capable of proof with reasonable certainty and no recovery can be had for loss which is uncertain, contingent or speculative. Thus, no recovery can be had for loss of profits where it is uncertain whether any profit at all would have been made by the plaintiff.

We think the case of Automobile Insurance Co. of Hartford, Conn. v. Eastern Machinery Co., 63 Ohio App. 203, 25 N. E. (2d) 954, cited and relied on by the plaintiff herein is distinguishable from the case at bar, as are the cases of Globe & Rutgers Ins. Co. v. Cleveland, 162 Tenn. 63, 34 S. W. (2d) 1059 and Illinois Automobile Ins. Exchange v. Braun, 280 Pa. 550, 124 A. 691, 36 A. L. R. 1262.

Counsel state that they have been unable to find a Tennessee case that is exactly in point as to the facts involved, and we also have been unable to find a case dealing with the exact question presented here, however, we think the principles laid down in the cases hereinabove referred to and discussed are applicable.

A careful consideration of the record herein leads us to conclude that the learned trial Judge reached the right decision in this case, and it results that the assignment of error of the appellant is overruled and the judgment of the trial Court is affirmed.

Under this view of the case it is not necessary for us to pass on the assignment of the appellee or to consider whether or not it is available to him in the absence of an appeal by him.

Affirmed.

Felts and Hickerson, JJ., concur.