BILLY D. BAKER, Plaintiff-Appellee, v. RIVERSIDE
CHURCH OF GOD, Defendant-Appellant.
—453 S.W.2d 801.

Middle Section. January 2, 1970.

Certiorari Denied by Supreme Court May 4, 1970.

272

Jerry Colley of MacFarland, Colley, Blank & Jack, Columbia, for plaintiff-appellee.

Robert C. Sanders, Columbia, Dan Finch, of Watkins, McGugin, Stewart, Finch & McNeilly, Nashville, for defendant-appellant.

PURYEAR, J. This appeal is from a judgment of the Circuit Court of Maury County, in the sum of $30,-000.00 rendered in favor of the plaintiff-appellee, Billy D. Baker, to whom we will hereinafter refer as plaintiff, and against Riverside Church of God, the defendant-appellant herein, to which we will hereinafter refer as defendant.

Plaintiff sued defendants, Riverside Church of God, and its pastor, Reverend Bernard Schultz, for damages for personal injuries and filed a two count declaration, the first count being based upon a tort action and the second count thereof being based upon an action for breach of contract. In both counts of said declaration plaintiff sued for damages for personal injuries.

Although the suit was originally filed against Bernard Schultz and Riverside Church of God, judgment was ren-

dered below in favor of Schultz and therefore, the only appellant in the case on appeal is the church.

The first count of the plaintiff's declaration alleges in substance that on November 21, 1967, plaintiff was employed by defendants to cut down a large tree on premises of the church, for the performance of which work the defendants agreed to furnish assistance. Said declaration further alleges that, on the day when the work was begun, which was November 18, 1967, defendants furnished a person to assist in felling the tree, but the task was not completed on that day and when plaintiff resumed work on November 21, 1967, defendants failed to furnish assistance and failed to furnish plaintiff a safe place to work, all of which constituted negligence upon the part of defendants, as a result of which plaintiff was injured while he was cutting the top out of said tree.

In the second count, which is based upon breach of contract, plaintiff adopts the material allegations of the first count and alleges that the defendants breached said contract made by them with plaintiff by failing to furnish necessary help and assistance, as a result of which plaintiff was injured.

The defendants first filed a demurrer to the declaration, which demurrer was overruled by the trial Court, and thereafter the defendants filed a plea of not guilty and also filed a special plea in which they relied upon the defenses of assumed risk and contributory negligence.

The case was tried before the Circuit Judge and a jury on October 3rd and 4th, 1968, and at the conclusion of all the evidence, defendants moved for a directed verdict, which was overruled by the trial Judge. However, before the case was submitted to the jury, plaintiff voluntarily

dismissed the first count, or the count in tort, and elected to rely solely upon the second count which alleged breach of contract.

All of the evidence which was introduced in the case was the plaintiff's evidence and none was introduced by the defendants, since they elected to rely upon their motion for a directed verdict.

The jury found in favor of the defendant, Bernard Schultz, but found in favor of plaintiff and against Riverside Church of God and fixed the plaintiff's damages at $30,000.00. Pursuant to said jury verdict, the trial Court dismissed the suit as to the defendant Bernard Schultz, and rendered judgment in favor of plaintiff and against Riverside Church of God for damages in the sum of $30,000.00. The defendant, Riverside Church of God, filed a motion for new trial which was overruled, as a result of which the defendant has prayed and perfected its appeal in error to this Court and filed six assignments of error.

## THE FACTS

Since all of the evidence in the case was introduced by plaintiff, it is uncontroverted and the facts can be briefly stated as follows:

At the time of the accident, plaintiff was 34 years of age, employed by Duck River Electric Membership Cooperative as a working foreman and lineman. Such employment required him to climb utility poles and he had worked at this type of employment for approximately eight years prior to the accident.

The defendant, Bernard Schultz, was pastor of the Riverside Church of God and he also worked in his occu-

pation as a barber. A few days before the accident occurred, plaintiff happened to be in the barber shop where Reverend Schultz worked, at which time Schultz made an agreement, on behalf of the church, for the plaintiff to cut a tree located upon the church grounds in Columbia. In the pursuit of his occupation as a working foreman and lineman, plaintiff was frequently called upon to trim trees which were overhanging power lines and on some occasions he had done some tree trimming and cutting for other persons during such times as he was not required to work at his usual duties of a foreman and lineman for Duck River Electric Membership Cooperative.

Plaintiff agreed to fell the tree in question for the sum of $50.00 provided the church would furnish help and assistance which plaintiff said he would need in order to do the work.

On Saturday afternoon, November 18, 1967, plaintiff went to the church property and his father-in-law, Mr. Arthur Pruitt, went along with him. Plaintiff had previously told Reverend Schultz that he would do some work on the tree that day and would need some assistance. Therefore, on that particular day a Mr. Angus, a member of the church, was present to render assistance.

On that day, several limbs were removed from the tree in order to later fell the trunk but, due to the fact that an unattended automobile was parked in the church lot near the tree, which automobile was locked and could not be moved, plaintiff decided not to cut the top out of the tree that day, because the top might fall on the automobile and damage it. Therefore, he told Mr. Angus he would

return on the following Tuesday, November 21, 1967, to finish the job.

On November 21, 1967, plaintiff returned, bringing his father-in-law with him for the purpose of cutting the top out of the tree and felling the trunk but neither Mr. Angus nor anyone else was present from the church to render the help and assistance which the church had agreed to furnish. Nevertheless, plaintiff decided to climb the tree to the point where he could cut off the top, thinking that Mr. Angus or someone else would arrive by the time he was ready to cut the top off and that Mr. Angus, or whoever might be sent by the church, would use a rope to pull the top away from the trunk so it would fall where plaintiff intended for it to fall.

By the time plaintiff had climbed to a point near the top of the tree, using a rope and linemen's spikes, Mr. Angus had not arrived and no one else from the church was present to help. So he secured himself in position with his safety belt and then pulled his chainsaw up from the ground by using a rope for that purpose, but by that time it appeared to him that the church wasn't sending any help that day, so he proceeded to ascertain whether or not he could cut the top out of the tree and make it fall where he wanted it to fall without having someone pull the top with a rope. He then decided that the top leaned in such a manner that it would probably fall properly without anyone pulling it with a rope.

On cross-examination plaintiff testified as follows:

"Q. This is right on the corner, isn't it?

A. No, it's back from the corner there.

Q. No, I mean the lot, the church, and everything is on the corner and 5th Avenue or 5th Street, or whatever

you call it, goes up pretty level for a couple of hundred feet and then goes up a rise, about 4 or 5 houses, is that right?

A. (Nodding head in the affirmative.)

Q. But, you didn't think it was dangerous, is that right? You figured it was just cutting and letting it go down?

A. I figured it would fall where I was standing at on it.

Q. Now, what I'm getting at is you had this 200 foot rope and if you had decided that it was important enough or dangerous enough to warrant having somebody do this business with the rope to pull it out, to insure it would come out; do you understand what I'm getting at?

A. (Nodding head in the affirmative.)

Q. Well, how far would this individual be, would you tie the rope on here where you notched it, and then he would go out a certain distance and pull it taut?

A. No, you would tie it on up near the top.

Q. Near the top?

A. Yes, sir.

Q. Well, how far would your helper, whoever he would be, would he get away?

A. The length of the rope.

Q. Two hundred feet?

A. That's right, the length of the rope.

Q. Well, couldn't you just pull it out a hundred feet, wouldn't that be enough? I don't understand that.

A. Well, just—

Q. Just far enough to give it—

A. Just far enough to get it out of the way, to pull it off the top.

Q. And he could have pulled it and gotten out in the street or on the other side of the street with the rope coming down, couldn't he?

A. Approximately, I'm not sure.

Q. So, you have your father-in-law go up and stop a cab at the intersection of 5th and Carter?

A. Stop traffic, yes, there was a cab there.

Q. All right. And he stopped it?

A. (Nodding head in the affirmative.)

Q. All right. You didn't then have him come over and pull the rope; you never did put the rope on there, did you?

A. Because I'd done sawed then, I had him down there watching traffic to begin with.

Q. But, you never did put the rope on there?

A. No, because no help never showed up to pull it out.'' (B. of E. pp. 64, 65, 66)

\* \* \* \* \* \*

''Q. I understand about the help, the help was not there?

A. Okay. I decided to try to notch it, because I had done been in the tree twice, and I didn't want to make a third time—

Q. That's right?

A. —cause it was worth that to climb the tree, so I decided—

Q. You wanted to get it over with, in other words?

A. Not actually over with, but, it was work, and I was trying to help the church out to begin with, of course, after that they didn't seem to—well, anyhow, I sawed it and the limb opened up to fall just like taking a weight off of it, it ran out—

Q. Like you anticipated it would?

A. Like I thought it would, right. And when it did that I let everything out of the way and my father-in-law was, Mr. Pruitt, was standing down at the end of the street, and I told him that this has opened up, ready to fall, I said don't let anything come under it, could you imagine if a car come under there—

Q. I understand that—

A. Well, good.

Q. If the tree hit somebody on the head it's going to hurt them—

A. If it had hit a car it would have mashed it into the ground and probably killed somebody, which it almost did me.

Q. So you kept him down there—

A. So it being opened up, I pushed on it to get the top, maybe to just a little leaning, so you can imagine about

how it was by just opening up, it looked, you know, it was opening to fall.

Q. And you reached around and pushed it?

A. I reached up and pushed on it a little bit and when the top started over it broke off, it broke out of the notch, as I'm sure a lot of people know, and the butt was so heavy that it swung out.

Q. It swung out this way—

A. It swung out away from me and the top came back and got me.'' (B. of E. pp. 67, 68, 69)

As a result of the accident, plaintiff was struck by some of the limbs of the falling tree top, which crushed him against the trunk of the tree, causing serious, painful and disabling injuries, the most serious of which was a crushed ankle, which caused disability from which he was continuing to suffer at the time of trial.

## OUR CONCLUSIONS

The second and sixth assignments of error raise the proposition that the trial Court erred in overruling defendant's motion for a directed verdict because there is no evidence to support a verdict for plaintiff. Of course, it is our duty to assume that all of the evidence is true and to draw favorable inferences therefrom in favor of plaintiff. Poole v. First National Bank (1946), 29 Tenn. App. 327, 196 S.W.2d 563; General Motors Corp. v. Dodson (1960), 47 Tenn.App. 438, 338 S.W.2d 655; Phillips v. Newport (1945), 28 Tenn.App. 187, 187 S.W.2d 965. Likewise, and in reverse order, it is true that where there is no material and determinative evidence to support a

verdict for the opponent of the motion it must be sustained. Cude v. Culberson (1947), 30 Tenn.App. 628, 209 S.W.2d 506; Camurati v. Sutton (1960), 48 Tenn.App. 54, 342 S.W.2d 732.

When we apply the foregoing rule, we cannot escape the conclusion that all reasonable persons must agree that the plaintiff knowingly assumed the risk of injury for which he sues and therefore, he cannot recover.

■ Although the doctrine of assumed risk is ordinarily applied where there is a relationship of employer and employee, we think it applies here with equal or greater force than it would in a case involving the ordinary employer-employee relationship.

■ This is one of those marginal cases in which the plaintiff could possibly be considered as an employee, in the ordinary meaning of the word, or as an independent contractor. But the fact that he had the right to control the way and manner in which the work was to be accomplished, lends support to his own theory that he was an independent contractor, as alleged in his declaration.

■ There is no allegation or proof that he is a person of inferior skill, knowledge or proficiency in the type of work he was undertaking to do. Therefore, he was in a better position to evaluate the risk involved than the defendant was and if he underestimated the risk involved it was his own error and not the error of defendant. A statement of the doctrine of assumed risk was quoted with approval by the Supreme Court in Talbot v. Taylor (1935), 184 Tenn. 428, 201 S.W.2d 1, as follows:

"In 5 C.J. 1413, under the title 'Assumption of Risk,' it is said: 'A term which the law imports into the con-

tract, when nothing is said to the contrary, that the servant will assume the ordinary risks of the service for which he is paid; the voluntary exposure, without remonstrance, to the ordinary hazards of the particular use of machinery or appliances, claimed by an employee to be defective or unfit, but of which conditions he knew, or must necessarily have acquired knowledge in the ordinary pursuit of his duties; in effect a waiver of defects and dangers and a consent on the part of the employee to assume them, no matter whether he be careful or negligent in his conduct. The term usually applies to the relation of master and servant, but may apply to other relations.' '' Supra, p. 432, 201 S.W.2d p. 2.

In affirming a verdict for defendant in Ferguson v. Phoenix Cotton Mills (1901), 106 Tenn. 236, 61 S.W. 53, the Supreme Court said that if an accident and injury might have been prevented by the employee's exercise of reasonable care and diligence there is no ground of liability. In that case the plaintiff, who was a laborer employed by the defendant, insisted that some of the injuries which he sustained were caused when he and another person tried to lift a truck out of a hole, as a result of which he was ruptured by the strain of lifting or coming in contact with the bed of the truck while pushing it on the truck when it fell into a hole.

In commenting on this insistence, the Supreme Court said:

"If the wheel of the truck had gone into the hole, and it was the duty of the employee to lift it out, then he cannot hold the master liable for overexerting and straining himself. He is the best judge of his own

lifting capacity, and the risk is upon him not to overtax it." Supra, p. 240, 61 S.W. p. 54.

A very enlightening discussion of the doctrine of assumed risk is found in the opinion of this Court in Bouchard v. Keaton (1928), 9 Tenn.App. 467, wherein this Court said:

"In strictness, the technical doctrine of 'assumption of risk' applies perhaps only to the contractual relation of master and servant, but one frequently finds in opinions of the courts the expression 'assumption of risk' as the practical equivalent of the term 'contributory negligence.'" 20 R.C.L., p. 109, sec. 95.

In 45 Corpus Juris, p. 944, sec. 503 it is said:

'While, under certain circumstances, the same acts or conduct may render one guilty of contributory negligence or give rise to the defense of assumption of risk, 'assumed risk' and 'contributory negligence' are distinct doctrines of law, and are not synonymous. The doctrines are distinguished from each other elsewhere in this work. In common parlance, however, the reckless disregard of a danger is often spoken of as an assumption of risk by the party exposing himself thereto, although it is not the ordinary assumption of risk arising out of contract relations.'

And it has long been the law, based on the ancient maxim, volenti non fit injuria, that one who voluntarily places himself in a position of peril, knowing and appreciating the danger, assumes the risk thereof. Broom's Legal Maxims, 8 Ed., p. 267, et seq.

In the case of Indiana, Etc., Oil Co. v. O'Brien, 160 Ind. 266, 271-272 (65 N.E. 918), the court said:

'Counsel for appellee insist that the doctrine of the assumption of risk must be confined alone to cases of negligence wherein the relation of master and servant or other contractual relations existed between the parties at the time of the accident, and can not be extended to a class of cases to which the one at bar belongs. It may be said that the principal commonly denominated 'assumption of risk,' in its technical sense or meaning, as recognized and applied in cases where the relation of master and servant or other contractual relations existed between the parties at the time of the accident, does not extend or apply to a class of cases to which the one under consideration belongs. Nevertheless we hold that what the authorities treat or consider as the doctrine of 'incurred risk' or 'taking the risk or hazard' or 'running the risk' incident to a known and appreciated danger, whatever the terminology used to denominate the doctrine may be, is applicable to a case of the nature or character of the one under review. In such cases, however, the doctrine of 'incurred risk' or 'taking the risk' or 'running the risk' may be said to rest upon, or be, in its nature, effect, and import, the equivalent, at least, of the principle expressed by the maxim volenti non fit injuria, and is not founded on the theory of an implied agreement or contract as is usually asserted in suits by a servant against the master. This doctrine or principle, as asserted, is of universal application, and is not confined alone to cases where the relation of the parties are of a contractual nature. Therefore, independently of such relations, there may be in a case like the one at bar an element to the effect that the injured party by his acts in the premises is shown to have incurred or taken upon himself the risk incident to a

known and appreciated danger, and if the facts disclose such a feature or element in the case, it should be recognized and treated accordingly, and not merely as one constituting contributory negligence.'

In Miner v. Connecticut River Railroad Co., 153 Mass. 398, 402-403, (26 N.E. 994), it is said:

'Independently of any relation of master and servant, there may be a voluntary assumption of the risk of a known danger, which will debar one from recovering compensation in case of injury to person or property therefrom, even though he was in the exercise of due care. In other words, it may be consistent with due care to incur a known danger voluntarily and deliberately; and this may be so when the danger arises from the known or apprehended neglect or carelessness of others.'

In Standard Oil Co. v. Titus, 187 Ky. 560, 563 (219 S.W. 1077) the court said:

'In view of the fact that the doctrine of assumed risk is not based entirely on contract, but grows out of the application of the maxim, 'Volenti non fit injuria,' it is well settled that independently of the relation of master and servant, there may be a voluntary assumption of the risk of a known danger which will debar one from recovering compensation in case of injury, even though he was in the exercise of due care.'

The statement of the law last quoted was approved and applied in the case of McLeod Store v. Vinson, 123 Ky. 667, 281 S.W. 799, 800. And the same principle was announced and applied in the case of McLean v. Studebaker Bros. Co., 221 N.Y. 475, 117 N.E. 951, 1 A.L.R. 1551, 1553.

The same doctrine (described as assumed risk) has been applied in this State to a case wherein the relation of master and servant did not exist between the plaintiff and defendant. An Ice Company contracted with the Terminal Company to ice refrigerator cars on the premises of the Terminal Company. Baker, an employee of the Ice Company, while engaged in icing a car in the performance of his employer's contract with the Terminal Company, fell from the top of a car, and was injured. In the course of its opinion disposing of Baker's action for personal injuries against the Terminal Company, the Supreme Court said:

'The other allegation is that plaintiff did not know of the snow and ice being on said car, which defendants had negligently allowed to be there, and failed to warn plaintiff against the danger. This was a danger that was open and obvious to plaintiff the moment he climbed upon the car, and having assumed the risk of icing the car under such conditions, he cannot be heard now to complain.' Baker v. [Louisville & N. Terminal] Railroad, 106 Tenn. 490, 500, 61 S.W. 1029.

The case of Baker v. Railroad, supra, is one of the cases cited in 44 A.L.R. at pp. 1124-1125, as supporting the statement of the Annotator that 'by most of the American courts which have had occasion to express their views upon the subject, the remedial rights of a contractor's servant have uniformly been determined upon the theory that his assumption of a risk becomes a conclusion in point of law, whenever it appears the injured person was chargeable with knowledge, actual or constructive, of that risk.' '' Bouchard v. Keaton, supra, pp. 481, 482, 483.

The principles as above stated, were also applied by this Court in the leading case of Loew's Nashville & Knoxville Corp. v. Durrett (1934), 18 Tenn.App. 489, 79 S.W.2d 598.

Application of these principles to the instant case make it abundantly clear that the plaintiff cannot recover. It is established beyond controversy that he knew every fact with respect to the nature of the work which he was undertaking to do which was known to the defendants. In fact, his knowledge should have been superior to that of the defendants because the only knowledge thereof shown on the part of defendants is that imputed to them through his requirement that they furnish him with some help or assistance.

■ This Court always acts with reluctance in setting aside the verdict of a jury, approved by the trial Judge, awarding compensation to a person who is seriously injured. However, we have no alternative in this case, because the plaintiff is indeed "the author of his own misfortune."

There is also another reason why the plaintiff cannot recover in this case. This is because the damages for which the plaintiff sues are not recoverable for a breach of contract which is made the basis of this lawsuit. In Denie's Sons Co. v. 638 Tire & Vulcanizing Co. (1927), 3 Tenn.App. 609, this Court stated the rule as follows:

" 'The rule as to actual and compensatory damages for the breach of a contract is stated in the case of State of Tennessee v. Ward & Briggs, 9 Heisk., page 80 [100], headnote 8, as follows:

'Damages for breaches of contracts are such as are incidental to or directly caused by the breach and may reasonably be supposed to have entered into the contemplation of the parties. The contract itself must give the measure of damages.' '' Supra, p. 615

The Denie's case was also cited with approval in the opinion of this Court in Central National Ins. Co. v. Horne (1959), 45 Tenn.App. 711, 326 S.W.2d 141.

A general statement of the rule is found in Corpus Juris Secundum as follows:

"As a general rule, sometimes expressed in statutory enactments, the damages to which one party to a contract is entitled because of a breach thereof by the other are such as arise naturally from the breach itself, or such as may reasonably be supposed to have been within the contemplation of the parties at the time of making the contract as a probable result of a breach thereof, or, as sometimes stated, such as were reasonably foreseeable and within the contemplation of the parties at the time they made the contract.

Conversely, damages which do not arise naturally from a breach of the contract, or which are not within the reasonable contemplation of the parties, are not recoverable. The promisor is not required to compensate the injured party for injuries which the promisor, when he made the contract, had no reason to foresee as the probable result of his breach." Vol. 25 C.J.S. Damages sec. 24a, pp. 662-667

Perhaps the most elaborate and best reasoned statement of the rule was made long ago by the Supreme Judicial Court of Massachusetts in Squire et al. v. Western Union Telegraph Co. (1867), 98 Mass. 232:

"A party who has failed to fulfil a contract cannot be held liable for remote, contingent and uncertain consequences, or for speculative or possible results which may have ensued on his breach of duty, although they may be traceable to that cause. The reason is, that damages of such a nature are not the natural or necessary incidents of a contract, and cannot be deemed to have been within the contemplation of parties when they agreed together. A rule of damages which should embrace within its scope all the consequences which might be shown to have resulted from a failure or omission to perform a stipulated duty or service would be a serious hindrance to the operations of commerce and to the transaction of the common business life. The effect would often be to impose a liability wholly disproportionate to the nature of the act or service which a party had bound himself to perform and to the compensation paid and received therefor." Supra, p. 237

We must apply the above rule to this case, and since we do, then how can it be said that when the parties made the contract under consideration here both of them contemplated that if the church breached its contract by failing to furnish the plaintiff the necessary help and assistance that he needed to fell the tree, that the plaintiff would, nevertheless, climb the tree and without any assistance, saw the top of it out, push it with his hand, and then be struck and injured by it as it swung around and fell against him?

Since the parties did not contemplate such conduct on the part of the plaintiff, they did not contemplate or agree upon liability for any damages resulting from such conduct. In the absence of express agreement upon the subject, the parties must be presumed to have

contemplated that, in event of failure of the church to furnish help as agreed, the plaintiff would hire necessary help at the expense of the church or abandon the contract and sue for value of work done and/or other damages, such as loss of profit.

It results that the second and sixth assignments must be sustained.

The judgment of the trial Court is reversed, and set aside and the suit dismissed.

This disposition of the case makes it unnecessary for us to consider the other assignments. The plaintiff will pay all of the costs of this appeal.

Shriver P.J.(M.S.), and Todd, J., concur.