935 F.2d 235
 Larry Joe MARTIN, Plaintiff, Cross-Defendant,
Counter-Claimant, Appellant,
Maryland Casualty Company, Intervenor-Plaintiff,
Counter-Defendant, Appellee,
v.
COMMERCIAL UNION INSURANCE COMPANY, Defendant,
Cross-Claimant, Appellee.
 No. 90-8406.
 United States Court of Appeals,
Eleventh Circuit.
 July 9, 1991.
 
 John M. Hyatt, Decatur, Ga., for plaintiff, cross-defendant, counter-claimant, appellant.
 Gary L. Seacrest, Karsten Bickness, Bentley, Karesh, Seacrest, Labovitz & Campbell, and Roger S. Sumrall, Sullivan, Hall, Booth & Smith, Atlanta, Ga., for Commercial Union Ins. Co.
 John E. Hall, Jr., Sullivan, Hall, Booth & Smith, Atlanta, Ga., for Maryland Cas. Co.
 Appeals from the United States District Court for the Northern District of Georgia.
 Before JOHNSON and BIRCH, Circuit Judges, and MERHIGE*, Senior District Judge.
 BIRCH, Circuit Judge:
 
 
 1
 This action for declaratory judgment concerns conflicting claims to settlement proceeds from a tort action in Tennessee. Appellant Larry Joe Martin was injured in a traffic accident and received $14,593.03 in personal injury protection (PIP) benefits from appellee Commercial Union Insurance Company ("Commercial Union"), pursuant to Georgia law and the terms of his insurance policy with Commercial Union. Martin subsequently filed suit in the United States District Court for the Middle District of Tennessee against the driver and the trucking company involved in the accident. Martin and the defendants' insurer, appellee Maryland Casualty Company ("Maryland Casualty"), agreed to settle his tort claim for $33,250, but Commercial Union then asserted subrogation rights to $14,593.03 of the settlement proceeds. Martin petitioned the United States District Court for the Northern District of Georgia for a declaratory judgment that Commercial Union could not satisfy its claim out of his settlement check, and Maryland Casualty intervened to protect itself against Commercial Union's subrogation claim. The district court discharged Maryland Casualty from any liability above the amount of its settlement with Martin, and granted summary judgment to Commercial Union on the subrogation issue. On appeal, we REVERSE and hold that Commercial Union cannot recover $14,593.03 from Martin, although it may pursue its subrogation claim against Maryland Casualty.
 
 I. BACKGROUND
 
 2
 On August 28, 1986, in Nashville, Tennessee, Martin's truck collided with a truck owned by Jerry Moody Trucking Company ("Moody Trucking") and driven by Kenneth Hesson, an employee of Moody Trucking. Martin was injured in the accident and filed a claim with his insurance company, Commercial Union. The insurance policy was issued in Georgia pursuant to the Georgia Motor Vehicle Accident Reparations Act (the "No Fault Act"), O.C.G.A. Sec. 33-34-1 to -17. Commercial Union paid Martin $14,593.03 in PIP benefits for medical bills and lost wages under the terms of his insurance policy and the No Fault Act.
 
 
 3
 Martin filed a complaint against Hesson and Moody Trucking in the Tennessee district court on August 25, 1987, three days before Tennessee's one-year statute of limitations would have barred his personal injury claim. Commercial Union was unaware of Martin's lawsuit, but the insurer's investigation determined that Hesson was responsible for the accident. Commercial Union sent a letter to Moody Trucking on December 1, 1987, and demanded reimbursement for the full amount of the PIP benefits paid to Martin. The letter was signed by Lois McDougald, a senior claims representative with Commercial Union. Moody Trucking was asked to forward the letter to its insurance carrier.
 
 
 4
 Commercial Union did not receive a response to its demand letter, and the insurer waited six months before making a second attempt to protect its subrogation interest. On May 17, 1988, McDougald telephoned Jerry Moody to check the status of Commercial Union's claim. Moody told her that he had forwarded the December 1, 1987 letter to Maryland Casualty, and further revealed that Martin had sued Hesson and Moody Trucking in the Tennessee district court. Commercial Union contends that it had no knowledge of Martin's tort claim before May 17, 1988. Moody offered to forward another copy of McDougald's letter to Maryland Casualty, and McDougald subsequently mailed a copy of the letter to him for that purpose.
 
 
 5
 The day before McDougald's conversation with Moody, Maryland Casualty offered to pay Martin $33,250 to settle his case. A Nashville attorney, Michael Evans, was retained by Maryland Casualty to represent Hesson and Moody Trucking before the Tennessee court. Martin's Tennessee counsel, Thomas Wyatt, later accepted Evans' settlement offer by telephone message and confirmed Martin's acceptance in a letter dated May 24, 1988.
 
 
 6
 After the settlement offer was accepted, Evans contacted Maryland Casualty and requested a settlement draft for $33,250 payable to Larry Joe Martin and Thomas Wyatt. When Evans advised Moody of the settlement, however, Moody mentioned his conversation with McDougald regarding Commercial Union's assertion of a subrogation interest. After speaking with Moody, Evans advised Maryland Casualty to include Commercial Union as a third payee on the settlement draft. The draft was forwarded to Wyatt, with a release and order of dismissal with prejudice, on June 1, 1988; in his cover letter, Evans explained that Commercial Union was included on the draft to protect Maryland Casualty from a possible subrogation claim.
 
 
 7
 The settlement proceeds were to be disbursed through a trust account controlled by Martin's Georgia counsel, John Hyatt. Accordingly, Wyatt endorsed the settlement draft and forwarded it to Hyatt with a request for a legal opinion regarding the validity of Commercial Union's subrogation claim under Georgia law. Pursuant to the terms of the settlement agreement, Wyatt also filed the order of dismissal with prejudice, which was entered on June 27, 1988.
 
 
 8
 On July 6, Wyatt prepared a letter to Evans asking Maryland Casualty to reissue the settlement draft payable to Martin and Wyatt, without Commercial Union. By way of enclosure, the letter returned the original settlement draft along with Hyatt's legal opinion that Commercial Union had waived its subrogation claim under Georgia law by failing to intervene in the Tennessee action. Nonetheless, Maryland Casualty refused to reissue the settlement draft without Commercial Union as a designated payee.
 
 
 9
 Martin responded by filing this action in the Georgia district court; he seeks a declaratory judgment that Maryland Casualty owes him $33,250 and that Commercial Union does not have a valid subrogation interest. Even if the right of subrogation was not waived, however, Martin argues that Maryland Casualty should be responsible for that claim because his agreement with Maryland Casualty did not contemplate payment of any part of his settlement proceeds to Commercial Union. The district court held that Commercial Union had not waived its subrogation rights, and also discharged Maryland Casualty from any liability above the amount of its negotiated settlement with Martin. That decision leaves Martin liable to Commercial Union for $14,593.03.
 
 II. DISCUSSION
 
 10
 When reviewing a district court decision to grant a motion for summary judgment, we apply the same standards used by the district court in its consideration of the motion. Rice v. Branigar Organization, Inc., 922 F.2d 788, 790 (11th Cir.1991). We must examine the evidence in the light most favorable to the non-moving party, and decide whether any genuine issue of material fact exists to preclude judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The party opposing the motion must present specific facts in support of its position and cannot rest upon allegations or denials in the pleadings. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
 
 
 11
 This case presents two issues for determination: (1) is Martin entitled to recover the entire amount of his negotiated settlement in the Tennessee action from Maryland Casualty? and (2) is Maryland Casualty discharged from responsibility for Commercial Union's subrogation claim because Commercial Union's failure to intervene in the Tennessee action extinguished its subrogation rights under Georgia law? For the reasons that follow, the answers are (1) yes, and (2) no.
 
 
 12
 The first issue implicates the integrity of the judicial process in the Tennessee action. Martin filed a complaint against Hesson and his employer, Moody Trucking, seeking damages for Martin's injuries from the accident. The Tennessee district court was an appropriate forum because the accident occurred in Tennessee and involved a Georgia plaintiff, Martin, and two Kentucky defendants, Hesson and Moody Trucking. The defendants' insurance company, Maryland Casualty, ultimately agreed to pay Martin $33,250 to settle the lawsuit. That negotiated settlement did not contemplate or discuss any liability for Commercial Union's subrogation claim.
 
 
 13
 The settlement agreement was negotiated by Tennessee lawyers in a Tennessee forum, and is binding under Tennessee law. Georgia law required the Georgia district court to honor the terms of the settlement contract in this action for declaratory judgment. See General Electric Co. v. Home Indemnity Co., 168 Ga.App. 344, 350, 309 S.E.2d 152 (1983). Commercial Union was not a party to the settlement agreement, and Maryland Casualty's belated attempt to protect itself by including Commercial Union as a payee on the settlement draft was a breach of its settlement contract with Martin.
 
 
 14
 Martin had no duty to inform Maryland Casualty of Commercial Union's possible subrogation claim because he had no reason to know that the claim existed. Accordingly, Martin is entitled to recover $33,250 from Maryland Casualty under the terms of the settlement agreement. He is not liable to Commercial Union for any part of his settlement proceeds from the Tennessee action.
 
 
 15
 The second issue implicates the rights and duties of each party as to Commercial Union's subrogation claim. Commercial Union's right of subrogation arose under Georgia law pursuant to O.C.G.A. Sec. 33-34-3(d)(1)(A), which provides a narrow exception to the general rule that a no-fault insurer cannot sue the tortfeasor to recover PIP benefits paid to its insured. U.S. Fidelity & Guar. Co. v. Carl Subler Trucking Co., 800 F.2d 1540, 1541 (11th Cir.1986). The exception permits subrogation if one of the vehicles in the accident weighs more than 6,500 pounds unloaded, and the parties do not dispute that the vehicles in this accident weighed more than 6,500 pounds. Therefore, Commercial Union had a valid subrogation claim after it paid $14,593.03 in PIP benefits to Martin.
 
 
 16
 Commercial Union did not intervene in the Tennessee action, and both Martin and Maryland Casualty argue that any subrogation rights were extinguished by the failure to intervene. Commercial Union counters that it had no notice of the Tennessee tort claim and therefore had no opportunity to intervene to prevent a waiver of its subrogation claim. We have not found a Georgia case that presents the issue of waiver of a subrogation claim under these circumstances, but we hold that the district court erred in granting Maryland Casualty's motion for discharge because Commercial Union did not waive its subrogation claim and is entitled to pursue that claim against Maryland Casualty.
 
 
 17
 In Subler, this court affirmed a dismissal of a PIP subrogation claim under Georgia law after the insurer failed to intervene in a tort action by its insured. Two facts distinguish Subler from the instant case: (1) the tort claim proceeded to judgment without any intervention by the insurer, and (2) the insurer knew of the tort action by its insured and chose not to intervene. The Subler panel noted that after the insured obtained a judgment in her tort action, she had no further rights against the tortfeasor to which the insurer could succeed by subrogation. Id., 800 F.2d at 1542.
 
 
 18
 The effect of an insured's settlement of a tort action on the subrogation rights of an insurer who has notice of the action but chooses not to intervene is unclear under Georgia law. This court recently certified that question to the Supreme Court of Georgia. See Prudential Commercial Ins. Co. v. Michigan Mut. Ins. Co., 924 F.2d 199 (11th Cir.1991). The district court opinion in the Prudential case held that "[i]f the insurer fails to intervene and the action is disposed of by judgment or settlement, such insurance company's subrogation rights against the tortfeasor are extinguished." 720 F.Supp. 167, 169 (N.D.Ga.1989). However, the continuing validity of that proposition will depend upon the Georgia Supreme Court's resolution of the certified question presented in the Prudential appeal.
 
 
 19
 This case differs from Prudential because Commercial Union received no notice of Martin's Tennessee lawsuit until May 17, 1988, when McDougald telephoned Jerry Moody to discuss Commercial Union's subrogation claim. The concept of waiver involves the "intentional or voluntary relinquishment of a known right." Black's Law Dictionary 1580 (6th ed. 1990) (emphasis added). Commercial Union could not waive its subrogation claim by failing to intervene in the Tennessee action unless it were charged with actual or constructive knowledge of that action, and no such claim is made in this case.
 
 
 20
 Maryland Casualty also complains that it had no notice of Commercial Union's subrogation claim before settling with Martin. Allegedly, Moody twice sent Maryland Casualty a copy of McDougald's December 1, 1987 letter regarding its claim for reimbursement of the benefits paid to Martin. It is unclear whether Maryland Casualty actually received those letters, but we charge the insurer with constructive knowledge of the subrogation claim because the knowledge of its insured, Moody, may be imputed to Maryland Casualty under these circumstances.[1]
 
 
 21
 If Maryland Casualty had some knowledge of McDougald's letter before settling with Martin, the settlement would not defeat Commercial Union's right to pursue its subrogation claim against Maryland Casualty. Georgia law provides that a tortfeasor's insurer cannot defeat a subrogation claim by settling with the victim, without the consent of the victim's insurance company, if the tortfeasor's insurer has actual or constructive knowledge of the subrogation claim. See Commercial Union Ins. Co. v. State Farm Mut. Auto Ins. Co., 823 F.2d 449, 450 (11th Cir.1987); Poole Truck Line v. State Farm Mut. Auto Ins. Co., 163 Ga.App. 755, 294 S.E.2d 570, 571-72 (1982).
 
 
 22
 Commercial Union protected its interests by writing to the tortfeasor, Moody, and asking him to notify his insurance carrier of its claim. Although Moody's vehicle insurance contract with Maryland Casualty is not part of the record in this case, such contracts typically impose a duty of cooperation on the insured party. A cooperation clause requires the insured to cooperate with his insurer when a lawsuit is filed against him. See, e.g., Central National Ins. Co. v. Horne, 45 Tenn.App. 711, 326 S.W.2d 141, 145 (1959) (the duty of cooperation includes agreement to assist in effecting settlement of the lawsuit).
 
 
 23
 If Maryland Casualty actually received a copy of McDougald's letter, then Georgia law would permit Commercial Union to recover against the tortfeasor's insurer. Poole Truck Line, 294 S.E.2d at 571-72. Nonetheless, Moody's actual knowledge will be constructively imputed to Maryland Casualty because Maryland Casualty should not escape liability on the conduct of its insured. If Moody breached a duty of cooperation to Maryland Casualty, then the insurer cannot benefit from that breach by claiming ignorance of Commercial Union's subrogation claim.
 
 
 24
 Accordingly, Commercial Union may recover from Maryland Casualty the PIP benefits paid to Martin. Martin is entitled to recover the full amount of his settlement with Maryland Casualty and is not liable to Commercial Union for any part of that award.
 
 
 25
 REVERSED.
 
 
 
 *
 Honorable Robert R. Merhige, Jr., Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 Maryland Casualty retained Evans to represent Hesson and Moody Trucking in the Tennessee lawsuit. Evans filed an affidavit in the district court wherein he expressed his understanding that Commercial Union's claim arose under Tennessee workers' compensation law. Affidavit of Michael E. Evans at 4-5, attached as Exhibit "B" to Brief of Appellee Maryland Casualty Company. That mistake does not excuse a failure to investigate or otherwise confirm such suspicions, if based on the text of McDougald's letter, because he could have telephoned McDougald and determined the nature of Commercial Union's claim. Evans did not represent Maryland Casualty, however, and we will not impute responsibility for his failure to act regarding the subrogation claim to Maryland Casualty