PRUDENTIAL COMMERCIAL INSUR-
ANCE COMPANY, a subsidiary of the
Prudential Insurance Company of
America, on Behalf of NEW JERSEY
AUTOMOBILE FULL INSURANCE
UNDERWRITING ASSOCIATION,
Plaintiff,

v.

MICHIGAN MUTUAL INSURANCE
COMPANY, Defendant.

No. 1:88–CV–2868–RHH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 18, 1989.

Edward M. Harris, Jr. and Vicki McReynolds Knott, Edward M. Harris & Associates, Decatur, Ga., for plaintiff.

Sewell K. Loggins and D. Keith Calhoun, Mozley Finlayson & Loggins and Gene A. Major, Fain, Major & Wiley, Atlanta, Ga., for defendant.

ORDER

ROBERT H. HALL, District Judge.

This case is before the court on defendant's motion for summary judgment. Fed.R.Civ.P. 56(c). The parties have entered into a stipulation of facts which present for this court a single issue of law. The question this court must address is simply whether an insurer who has a statutory right of subrogation against a tortfeasor may recover upon that right after its insured has reached a settlement with the tortfeasor in an action in which the insurer chose not to exercise its right to intervene?

The court finds that the insurer waived its right to subrogation by failing to intervene and, therefore, defendant's motion for summary judgment is GRANTED.

FACTS

Plaintiff brings this claim as statutory subrogee of Charlotte, Allen and Daniel Kimerling (Plaintiff's insureds) to recover personal injury protection benefits paid to or on behalf of its insured. (Stipulations 13 and 14). This action has been brought against defendant pursuant to O.C.G.A. § 33–34–3(d)(1)(B) (1982), as the vehicle operated by defendant's insured weighed in excess of 6,500 pounds unloaded. The action was originally filed in the state court of Fulton County, Georgia on November 28, 1988, and defendant timely removed to this Court with jurisdiction based on diversity of citizenship. 28 U.S.C. §§ 1441 and 1332 (1982).

This case arises out of a vehicle collision on or about November 17, 1986 on I–285 West just outside Atlanta, Georgia. Plaintiff's insureds were passengers in one of the involved vehicles, and defendant's insured was operating a tractor trailer truck. As a result of the collision, plaintiff's insureds Charlotte and Daniel Kimerling sustained injuries, and plaintiff's insured Allen Kimerling was killed. Plaintiff has paid personal injury protection benefits totaling around $218,000 to or on behalf of these three insureds.

After the accident, plaintiff's insureds, the Kimerlings, filed a personal injury action against the defendant and its insured

on March 10, 1987.[1] A week before the case was to proceed to trial, the parties (plaintiff's insured, defendant, and defendant's insured) reached a settlement. Though the defendant had been advised of plaintiff's subrogation claim, plaintiff was not given notice of this settlement agreement. An order approving the settlement was entered on May 24, 1988. (Stipulation ¶¶ 18–19).

The Kimerlings' case had been pending for over a year when a settlement was reached. Though Plaintiff was aware of the lawsuit against defendant and its insured, it did not intervene or attempt to appear in that lawsuit at any time. Upon settlement, the plaintiff's insured executed a full and final release of their claims against the defendant and its insured.

In this case, the plaintiff, Prudential, seeks to recover from the defendant, Michigan Mutual, all sums Prudential has paid to its insured, the Kimerlings. The suit is brought pursuant to O.C.G.A. § 33–34–3(d)(1)(B) (1982) which provides a narrow exception to the general rule that a no fault insurer may not sue the tortfeasor to recover PIP benefits paid to its insured.

In this motion for summary judgment, the defendant contends that plaintiff's failure to intervene in its insured's tort claim bars this action for subrogation benefits now.

## DISCUSSION

In a case involving very similar facts to the case at bar, the Eleventh Circuit Court of Appeals affirmed the dismissal of a PIP subrogation claim by an insurer because it failed to intervene in its insured's tort action. *U.S. Fidelity & Guaranty Co. v. Carl Subler Trucking, Inc.*, 800 F.2d 1540 (11th Cir.1986). In holding that the subrogee must intervene to protect its rights, the 11th Circuit cited "clear Georgia law" holding that the rights of an insurance company to subrogation depend entirely upon the insured's rights against the tortfeasor. Because the insurer's rights depend upon the insured's, the insurance company has an absolute right to intervene in its subrogor's tort action. *Id.* at 1542.

Plaintiff, however, does point to an important though not controlling distinction between *Subler* and the case at bar. In *Subler* the action was prosecuted to judgment. The court held that because the insured had received judgment from the court, she no longer had any rights against the tortfeasor to which the insurer could succeed by subrogation. Because the insured was legally barred from bringing another suit for the same incident, so was her insurer. The Georgia Court of Appeals had recognized this bar in 1980 while discussing a subrogee's right to intervene in its insured underlying tort action. *State Farm Mutual Automobile Insurance Company v. Five Transportation Company*, 246 Ga. 447, 271 S.E.2d 844 (1980). In *State Farm v. Five*, the court stated: "If the appellant [the insurance company] allowed this case to proceed to a judgment without asserting its right of subrogation by intervening as a party plaintiff, it could be argued that it waived its right of subrogation." *Id.* at 454, 271 S.E.2d at 850.

In this case the parties settled before trial. Though defendants cite several Georgia cases which hold that an insurer's right to subrogation is not extinguished by its insured's settlement or release of its claims, those cases do not involve situations where the insurer could have intervened in a pending tort action.

Plaintiff relies upon *Vigilant Insurance Company v. Bowman*, 128 Ga.App. 872, 874, 198 S.E.2d 346, 347 (1973) for the general proposition that "where the wrongdoer settles with the insured ... without the consent of the insurer ..., with knowledge of the insurer's payment and right of subrogation, such right is not defeated by the settlement." However, in *Vigilant*, there was never a tort action, the insurer had no notice of the negotiations between the parties and no opportunity to assert its interests in a public proceeding. The facts in the case at bar present quite a different situation.

---

**1.** The original action filed on December 12, 1986 was voluntarily dismissed by the plaintiffs.

There is one Georgia case which is on point and requires that the court grant defendant's motion. *Georgia Farm Bureau Mutual Insurance Company v. Alterman Foods*, 161 Ga.App. 695, 289 S.E.2d 537 (1982). In *Georgia Farm Bureau* the court discussed two different issues simultaneously leading to some confusion over the actual holding. However, upon close consideration, the court finds the decision helpful in ascertaining the intent of the Georgia courts in this relatively unexplored area.

The facts of *Georgia Farm Bureau* are much the same as the case at bar. There was a collision involving a vehicle operated by the Reddins and a vehicle operated by Alterman Foods. The Reddins insurer, Georgia Farm, paid PIP benefits to the Reddins in the amount of $5,000. The Reddins also brought suit against Alterman Foods for personal injury. After some negotiations, the Reddins settled with Alterman for $9,500. Under the then existing statute, an insurer could not recover subrogation benefits from a tortfeasor if its insured had not been fully compensated for all her economic and non-economic damages. Cognizant of this, Alterman and the Reddins included in their settlement agreement a provision stating that the Reddins had not been fully compensated.

Georgia Farm then sought subrogation benefits from Alterman Foods. After discovery, Alterman Foods moved for summary judgment on the grounds that the Reddins were not fully compensated for their damages, and therefore, Georgia Farm had no right to subrogation. The trial court granted summary judgment and the court of Appeals affirmed. The court seemed to rest its holding on two adequate and independent grounds. First, the court held that because Georgia Farm had notice of its insured's tort proceedings and failed to intervene, it did not retain its rights to subrogation. Second, the court decided that because the plaintiff's insured was not fully compensated, it had no subrogation rights under the statute. The court's opinion seems to rests its holding on the interrelation of these two independent grounds for granting summary judgment.

However, regardless of which grounds the Georgia Farm court relied upon, it is this court's opinion that the Georgia Court of Appeals expressed a clear intent to require an insurance company to intervene in order to protect its rights of subrogation.

This rule makes litigation over insurance claims more expeditious. If an insurer knows that it must intervene in order to protect its subrogation rights, litigation will almost always be consolidated, reducing the load on our already overcrowded court system. There can be no doubt it is in the interest of judicial economy and fairness to all litigants to join all interested parties in the same litigation over the same set of facts. If the court were to accept plaintiff's interpretation of *Subler*, requiring a final judgment before an insurance company's subrogation rights are extinguished, an insurer would be encouraged to sleep on its rights until the last possible moment. Or the insurer could file a simultaneous action and the parties would be forced to litigate in two forums, one racing the other to judgment.

We believe the Georgia courts did not intend such a scenario. A clear and practical rule requires a subrogee to intervene in an action in which its interests are being litigated, if such subrogee has notice of the action and an adequate opportunity to intervene. If the insurer fails to intervene and the action is disposed of by judgment or settlement, such insurance company's subrogation rights against the tortfeasor are extinguished.

CONCLUSION

For the above stated reasons, defendant's motion for summary judgment is GRANTED.