410 S.E.2d 30 (1991)
261 Ga. 637
PRUDENTIAL COMMERCIAL INSURANCE COMPANY et al.
v.
MICHIGAN MUTUAL INSURANCE COMPANY.
No. S91Q0727.
Supreme Court of Georgia.
November 1, 1991.
Edward M. Harris, Jr., Vicki M. Knott, Decatur, for Prudential Commercial Ins. Co.
Sewell K. Loggins, D. Keith Calhoun, Claude P. Czaja, Mozley, Finlayson & Loggins, Atlanta, for Michigan Mut. Ins. Co.
SMITH, Presiding Justice.
These questions are before us on certification from the United States Court of Appeals for the Eleventh Circuit. 924 F.2d 199. The appellant, Prudential Commercial Insurance Company (Prudential), as statutory subrogee of Charlotte, Allen, and Daniel Kimerling (Prudential's insureds) sued the appellee, Michigan Mutual Insurance Company (Michigan Mutual), to recover personal injury protection (PIP) benefits paid to the Kimerlings. The Kimerlings had been injured in a collision with a tractor-trailer insured by Michigan Mutual. Judge Robert Hall of the U.S. District Court for the Northern District of Georgia granted summary judgment for Michigan Mutual, holding that Prudential waived its right of subrogation by failing to intervene in the Kimerlings' action against Michigan Mutual prior to settlement. On appeal, the Eleventh Circuit certified to this Court two questions of law:
1. Whether Prudential, which has a statutory right of subrogation, may recover upon that right after the Kimerlings reached a settlement with Michigan Mutual and its insureds in an action in which Prudential chose not to intervene?
2. Whether Prudential, if it is entitled to recover on its statutory right of subrogation against Michigan Mutual and its insureds, is limited by Georgia Code Ann. § 33-34-5(a)(1) (1990) to a recovery upon that right of $50,000.00 in personal injury protection benefits paid to Charlotte Kimerling?
We answer question one in the affirmative, and question two in the negative.
Prudential insured the Kimerlings with a policy issued in New Jersey. On November 17, 1986 the Kimerlings were involved in a collision outside of Atlanta with a tractor-trailer operated by Michigan Mutual's *31 insured. The tractor-trailer weighed in excess of 6500 pounds unloaded.[1] Charlotte and Daniel Kimerling were injured in the accident and their son Allen was killed. Prudential paid approximately $218,000.00 in PIP benefits on behalf of these three insureds.
On March 10, 1987, the Kimerlings filed a personal injury action against Michigan Mutual and its insured. Prudential failed to intervene in the action, although it claims to have notified Michigan Mutual of its subrogation claim. One week before trial, the Kimerlings settled with Michigan Mutual without notifying Prudential and issued to Michigan Mutual a release of liability.[2]
Prudential then filed this action in the State Court of Fulton County, and the case was removed to the Federal District Court. Prudential seeks to recover from Michigan Mutual all sums Prudential has paid to the Kimerlings, pursuant to OCGA § 33-34-3(d)(1)(B).[3] The District Court granted summary judgment for Michigan Mutual, and Prudential appealed to the Eleventh Circuit Court of Appeals, which certified to this Court the two questions under consideration.
1. Michigan Mutual contends that Prudential waived its right of subrogation by failing to intervene in the Kimerlings' suit against Michigan Mutual prior to settlement. We disagree.
This case is controlled by United States Fidelity & Guaranty Co. v. Ryder Truck Lines, Inc., 160 Ga.App. 650, 288 S.E.2d 1 (1981) and Vigilant Insurance Co. v. Bowman, 128 Ga.App. 872, 198 S.E.2d 346 (1973). In USF & G v. Ryder, supra, USF & G's insureds reached a compromise settlement with Ryder (the tort-feasor) prior to trial and released Ryder from liability. The settlement was without USF & G's consent, though Ryder had knowledge of USF & G's subrogation claim. Recognizing USF & G's statutory right of subrogation, the court stated:
... the release of plaintiff Ryder as to the tort case in federal court would not bar the subrogation claim here. The release was executed without the consent of USF & G, and at that time of execution [sic], Ryder had actual knowledge of USF & G's subrogation claim. Ryder, the tort-feasor (wrongdoer), could not obtain the release so as to protect Ryder, the self-insurer, to prevent USF & G from pursuing its subrogation claim under the statute.
The court reached a similar decision in Vigilant, supra. There, the court held that "as a matter of general law, where the wrongdoer settles with the insured ... without the consent of the insurer ... with the knowledge of the insurer's payment and right of subrogation, such right is not defeated by the settlement." Id. 128 Ga. App. at 874, 198 S.E.2d 346. We believe these holdings control the present case.
Michigan Mutual relies heavily on a statement made by this Court in State Farm Mutual Auto Insurance Co. v. Five Transportation Co. et al., 246 Ga. 447, 271 S.E.2d 844 (1980). There, we stated that "[i]f the appellant [insurance company] allowed this case to proceed to a judgment without asserting its right of subrogation by intervening as a party plaintiff, it could be argued that it waived its right of subrogation." Id. at 454, 271 S.E.2d 844. (Emphases supplied.)
This language does not control the present case. First, because the insurance company in State Farm v. Five actually *32 filed a motion to intervene in the case, the language was not necessary to the case's determination, and thus was dictum. Second, the quoted passage merely states that "it could be argued" that the insurance company waived its right of subrogation. We did not hold as a matter of law that the insurance company must intervene to protect its subrogation right.
Thus, Georgia case law dictates that, where a case is settled prior to trial, the insurer's right of subrogation is not barred by its failure to intervene.
2. Michigan Mutual also argues that any subrogation right held by Prudential is limited by OCGA § 33-34-5 to a maximum dollar amount of $50,000.00 per injured person.
Such a reading conflicts with the plain language of our no-fault subrogation statute, OCGA § 33-34-3, and Jordan v. TG & Y Stores Co., 256 Ga. 16, 342 S.E.2d 665 (1986). OCGA § 33-34-3(d)(1)(B) reads in pertinent part: "The right of recovery and the amount of recovery shall be determined on the basis of tort law between the insurers or self-insurers involved." (Emphasis supplied). OCGA § 33-34-3(d)(2) then provides:
Nothing contained in paragraph (1) of this subsection shall be deemed to increase or enlarge the bodily injury liability, personal injury protection, or medical payments limits of any policy of motor vehicle liability insurance in this state.
As we stated in Jordan v. TG & Y Stores Co., supra, 256 Ga. at 18, 342 S.E.2d 665:
... [Where subrogation under OCGA § 33-34-3(d)(1) applies] the statute, by clear implication subrogates the no-fault insurer to the rights of its insured against a third party tort-feasor to the extent of no-fault benefits paid. This means the insurer may recover benefits it paid its insured from the tort-feasor to the same extent the tort-feasor is liable to its insured. It has the same rights, neither more nor less, than its insured possesses against the tort-feasor.
Thus, "a liability carrier that settles with the injured party for less than the policy limits does so at its own risk and remains potentially liable for the no-fault carrier's subrogation claim up to the policy limits." Southern General Ins. Co. v. Cotton States Mutual Ins. Co., 193 Ga.App. 240, 241, 387 S.E.2d 435 (1989). There is no need to look to other insurance law provisions, or to create an artificial limit to subrogation based upon the statutory requirement for insurers (issuing relevant policies in Georgia) to offer optional benefits and coverages under OCGA § 33-34-5. We read OCGA § 33-34-3 as establishing the right of a lawful subrogee under the statute to seek recovery from the insurer of a tort-feasor the subrogee's legitimate payments made pursuant to the no-fault provisions of its policy with the injured, up to the aggregate of the bodily injury liability, personal injury protection, and medical payments provisions of the policy being subrogated against.
Certified questions answered.
All the Justices concur.
NOTES
[1] OCGA § 33-34-3(d)(1) provides in pertinent part:

Insurers and self-insurers providing benefits without regard to fault described in Code Sections 33-34-4 and 33-34-5 shall not be subrogated to the rights of the person for whom benefits are provided except:
(A) In those motor vehicle accidents involving two or more vehicles, at least one of which is a motor vehicle weighing more than 6,500 pounds unloaded; ...
[2] The order approving the settlement was entered on May 24, 1988.
[3] OCGA § 33-34-3(d)(1)(B) provides in pertinent part: "The right of recovery and the amount of recovery shall be determined on the basis of tort law between the insurers or self-insurers involved."