IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 4, 2013 Session

# ERIK HOOD v. CASEY JENKINS ET AL.

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Chancery Court for Grainger County**
**No. 0908101     Telford E. Forgety, Jr., Chancellor**

_____

**No. E2011-02749-SC-R11-CV - Filed December 19, 2013**

_____

The minor beneficiary of a $100,000 life insurance policy filed suit against his financial guardian and the insurance company after the guardian misappropriated the insurance proceeds.  The trial court entered judgments in favor of the minor against both the guardian and the insurance company.  On appeal by the insurance company, the Court of Appeals affirmed, holding that the insurance company breached its contractual duties by entrusting the proceeds to the guardian.  The insurance company then applied for permission to appeal to this Court, contending that it could not be held liable for the loss to the minor because it had relied upon the validity of a juvenile court order of guardianship.  Because the insurance company acted in good faith when it relied upon a facially valid court order establishing a financial guardianship in making payment of the life insurance proceeds, it is not liable for breach of contract.  The judgment of the Court of Appeals is, therefore, reversed, and the claim against the insurance company is dismissed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed**

GARY R. WADE, C.J., delivered the opinion of the Court, in which JANICE M. HOLDER, CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Michael S. Kelley (at trial and on appeal) and Briton S. Collins (at trial), Knoxville, Tennessee, for the appellant, The Old Line Life Insurance Company of America.

Bruce T. Hill, Sevierville, Tennessee, for the appellee, Erik Hood.

**OPINION**
**I. Facts and Procedural History**

On March 28, 2002, The Old Line Life Insurance Company of America ("Old Line")[1] issued a $100,000 life insurance policy to David Ray Hood ("Hood"), who had named his son, Erik Christopher Hood ("Erik"), as the sole beneficiary under the policy. When Hood died on September 17, 2007, Erik, who was sixteen years old, left his father's residence in order to reside with his older half-sister, Casey Jenkins ("Casey").[2] In the next month, Old Line received a "Proof of Death Claimant's Statement" signed by Erik, notifying Old Line of Hood's death and requesting a lump sum payment of the proceeds. Meanwhile, Casey petitioned the Juvenile Court for Grainger County for an appointment of guardianship over Erik, which was granted with the consent of Erik and his mother, Donna Hood. After requesting additional documentation and confirming with the juvenile court that it had entered an order appointing Casey as Erik's financial guardian, Old Line issued a check to Casey on January 11, 2008, in the amount of $100,854.88. The insurance proceeds were deposited into a joint bank account in the names of Casey and Erik. Within eight months, the entire account was depleted.

On August 31, 2009, Erik filed a complaint in the Chancery Court for Grainger County, asserting that Old Line had "breached its duty to [Erik], a third party beneficiary of the policy," by releasing the insurance proceeds to Casey "without confirming that she was properly appointed and duly authorized to act as the guardian over [his] finances," and by failing to investigate whether Casey had met "all statutory requirements" of the guardianship laws in Tennessee. The complaint also alleged that Casey had breached her fiduciary duties by converting and spending "most, if not all," of the insurance proceeds and by also converting for her own use the Social Security death benefits payable to Erik. Erik later amended his complaint to claim both a breach of contract and negligence by Old Line; he specifically asserted that Old Line acted negligently by disbursing the insurance proceeds without properly investigating the appointment of Casey as guardian and without requiring adequate proof of the guardianship. Erik further alleged that Casey "had no legal authority to receive said funds."

---

[1] Old Line later became a part of the American General Life Insurance Company and, therefore, portions of the trial testimony and some documents in the record refer to "American General" or "AIG." For purposes of this opinion, we refer to the relevant insurance company as "Old Line."

[2] Erik and Casey share the same biological mother, Donna Hood. Erik's biological father, Hood, had adopted Casey while he was married to Donna Hood.

Casey did not respond to the complaint and the trial court entered a default judgment against her.[3] In its answer to the complaint, Old Line asserted four affirmative defenses, claiming (1) that it was entitled to rely upon the order of the juvenile court in disbursing the insurance proceeds to the guardian; (2) that it acted in good faith when it disbursed the insurance proceeds; (3) that even if negligent by disbursing the proceeds, its fault should be reduced in proportion to the fault of others, including that of the juvenile court judge; and (4) that its acts were not a proximate cause of the damage to Erik. Old Line also filed a cross-claim against Casey to recover any funds that Old Line might be ordered to compensate Erik. The trial court later denied competing motions for summary judgment and conducted a bench trial.

Charlotte Swanks, the claims examiner who had processed the insurance claim for Old Line at its Houston, Texas office, testified that after she had first reviewed the "Proof of Death Claimant's Statement," she requested additional documentation, including Hood's death certificate and a copy of the insurance policy.[4] She recalled that she subsequently received a copy of the death certificate from Lloyd Richardson, an independent insurance agent in Knoxville, who informed her that Erik was a minor. In letters dated November 2, 2007, and December 11, 2007, Ms. Swanks informed the agent that Old Line could not release the insurance proceeds without "guardianship papers for the finances of the minor beneficiary."[5] In response, the agent faxed to Ms. Swanks Casey's "Petition for Guardianship," an exact copy of which appears below:

---

[3] Casey did not appeal the default judgment. Although she was a witness at the trial, she is not a party to this appeal.

[4] The policy, which was made an exhibit at trial, included a section entitled "Payment of Proceeds," which provided, in pertinent part:

Proceeds will be payable on the date of the insured's death. . . .
Upon receipt of due proof of the insured's death, we will pay the insured's beneficiary the face amount. . . .
Due proof of the insured's death will consist minimally of our company claim form completed by the beneficiary and a certified copy of the death certificate of the insured.
Interest as required by law will be added to the proceeds payable under this policy.

[5] Although the insurance policy itself did not include any express provisions relating to the payment of proceeds to minor beneficiaries, the "special instructions" attached to the "Proof of Death Claimant's Statement" provided:

**Minor Beneficiary**. The Statement is to be completed by the legally appointed guardian of the Estate of the minor and an official certificate of the guardian's appointment must be furnished.

<u>PETITION FOR GUARDIANSHIP</u>

To the Honorable J. Wayne Wolfenbarger, Judge of the Juvenile Court of Grainger County, Tennessee: It appearing to the Court that ___David Hood Past away September 17, 2007___ presently have guardianship of said child, and feel that it would be in the best interest of the child if the Petitioner/s ___Casey Jenkins___ be awarded guardianship of ___Erik Chistopher Hood___, and respectfully ask this Honorable Court to approve said change.

The agent also included the "Appointment of Guardian of the Person" appearing below, which the juvenile court judge had signed on December 11, 2007, and asked Ms. Swanks whether the "attached appointment papers suffice":

## APPOINTMENT OF GUARDIAN OF THE PERSON

This cause came on to be heard upon a sworn petition and IT APPEARING to the Court that it is in the best interest of the child/ren that a Guardian of the Person be appointed, and that: ___Casey Jenkins___

___

are a fit and proper person/s to be so designated.

IT IS HEREBY ORDERED AND DECREED that: ___Casey Jenkins___

___ be

appointed Guardian of the Person of ___Erik C. Hood___

___ with the authority to provide the

necessary care and protection pending the filing of a petition pursuant to Tennessee

Code Annotated, Section 37-228, and that no bond be required.

In response, Ms. Swanks sent a letter on December 17, 2007, informing the agent that "the documents received only indicate Guardianship and do[ not] indicate Guardianship for the Finances of the Minor." She again specifically asked for "guardianship papers for the finances of the minor beneficiary" as a condition to the release of the insurance proceeds.

-4-

On January 3, 2008, the agent faxed to her the following "additional financial guardianship papers":

**PETITION FOR GUARDIANSHIP** (Financial)

To the Honorable J. Wayne Wolfenbarger, Judge of the Juvenile Court of Grainger County, Tennessee: It appearing to the Court that _____ Casey Jenkins _____ presently have guardianship of said child, and feel that it would be in the best interest of the child if the Petitioner/s Casey Jenkins _____ be awarded guardianship of *Financial Responsibility of Erik Hood* and respectfully ask this Honorable Court to approve said change.

**APPOINTMENT OF GUARDIAN OF THE PERSON** (Financial)

This cause came on to be heard upon a sworn petition and IT APPEARING to the Court that it is in the best interest of the child/ren that a Guardian of the Persons Financial *responsibility* appointed, and that: Casey Jenkins _____

_____

are a fit and proper person/s to be so designated.

**IT IS HEREBY ORDERED AND DECREED** that: Casey Jenkins of ████ Blaine, TN 37209 _____ be appointed Guardian of the Person of *Eric Hoods Financial Responsibilities*

_____ with the authority to provide the necessary care and protection pending the filing of a petition pursuant to Tennessee Code Annotated, Section 37-228, and that no bond be required.

Upon receiving this additional documentation, Ms. Swanks, concerned because the word "Financial" was handwritten, faxed the documents she had received from the agent to the Juvenile Court Clerk for Grainger County, "requesting [a] document in writing that this Petition for 'Financial' guardianship is valid." In response, she received an "Exemplification," signed by the clerk and the juvenile court judge, which provided that the order appointing "Eri[k] Hood Financial Guardian" was a true and perfect copy of the original order in the juvenile court. After reviewing the exemplification with the other

documentation and consulting with her supervising manager, Ms. Swanks issued a check in the amount of $100,854.88, which included interest from the date of death, to "Casey Jenkins as financial guardian [for the benefit of] Erik Christopher Hood, minor [beneficiary]."

During her cross-examination, Ms. Swanks conceded that she did not ask Old Line's legal department to review any of the documentation and that she had relied on the exemplification by the juvenile court and consultation with her supervising manager. She acknowledged that she had processed "[v]ery few" applications for minor beneficiaries and admitted that she was unfamiliar with Tennessee law governing the establishment of a guardianship. Ms. Swanks further conceded that she was unaware that the statute the juvenile court judge had cited in the orders of appointment, Tennessee Code Annotated section 37-228 (1977 & Supp. 1983), was outdated at the time of their entry.[6]

Erik, who was twenty years old at the time of trial, testified that after the death of their father, Casey had asked him to move in with her and her family. He recalled that the insurance agent had informed him that someone would need to be appointed as his financial guardian in order to gain access to the insurance proceeds and that Casey had agreed to "take care of everything." Erik remembered joining Casey in the juvenile court on three separate occasions. The first proceeding established the guardianship of his person; a second proceeding related to the guardianship involved the presence of his mother; and a third proceeding was conducted to create the financial guardianship. Erik testified that he did not consult an attorney during this time and stated that the juvenile court judge did not appoint a guardian ad litem to represent his interests in any of the proceedings. He stated that although he believed he was mature enough, at sixteen years old, to manage the insurance proceeds, he had trusted the juvenile court judge to properly appoint Casey as his financial guardian and had trusted Casey to "guard [his] proceeds" until he was of "legal age or . . . an appropriate age to accept that much money."

Erik further testified that he later saw a manila envelope containing the insurance check, but he denied accompanying Casey to the bank in order to deposit the check. Although his name was on the bank account in which the insurance proceeds were deposited, he denied knowing that he had access to the account, claiming that he only spent the benefits he received through Social Security and the amount of private donations he had received

---

[6] This statute, which relates to the authority of the juvenile courts to investigate allegations of delinquency, unruliness, abandonment, dependency, or neglect; to order temporary care and custody; and to request certain assessments and evaluations, is now codified, as amended, at Tennessee Code Annotated section 37-1-128 (2010 & Supp. 2013).

after his father's death.[7] Erik stated that Casey had used the insurance proceeds to purchase liquor, to dine at restaurants, to pay the employees of a construction company owned by her husband, to purchase sex paraphernalia, and to fund extensive renovations at his father's residence. He claimed that he first became suspicious that Casey may have misused the account when she refused to provide him with the related bank statements.

Donna Hood, the mother of Erik and Casey, acknowledged that she had consented to Casey's appointment as guardian because "[t]hat's what Erik wanted." She denied, however, that she had consented to Casey applying for the insurance proceeds.

Casey, twenty-six years old at the time of Hood's death, had obtained a degree in accounting but had been arrested three times for passing bad checks. She testified that prior to receiving the insurance check from Old Line she had opened two bank accounts jointly owned by her and Erik, but she could not recall whether Erik was with her when she opened the accounts. She stated that the first account was opened in September of 2007 to deposit Erik's Social Security checks and the donations from friends and family, and that the second account was reserved for the insurance proceeds. Casey identified the statements of the two accounts, which included copies of the checks signed either by her or by Erik. She claimed that she intended to benefit Erik by using the money in the second account to pay the two mortgages on Hood's residence, to renovate the residence, and to purchase Hood's vehicle that had been repossessed.[8] While she asserted that Erik had consented to some of her attempts to preserve Hood's estate, she admitted that she never sought advice from an attorney regarding her use of the insurance proceeds and that she never understood her responsibilities as a financial guardian.

The trial court awarded judgment to Erik against Old Line for $86,842.37, representing the $100,854.88 less funds expended at the behest of Erik, and awarded Old Line a judgment in the same amount for its cross-claim against Casey. The court also awarded a default judgment to Erik against Casey in the sum of $100,000.

In its appeal to the Court of Appeals, Old Line presented the following issues for review: whether Old Line breached its contract when it distributed the insurance proceeds to Casey upon receipt of a facially valid guardianship order from the juvenile court; and if

---

[7] While Erik acknowledged that he had signed several checks that were linked to the account with the insurance proceeds, he testified that he had mistakenly used a checkbook from that account, believing that it was a checkbook from a different bank account with his Social Security benefits and private donations.

[8] Casey testified that she thought these actions would benefit Erik because he was the intended recipient of ninety percent of Hood's estate. Hood's will left the remaining ten percent to Casey, on the condition that she obtain a college degree.

the guardianship was invalid because Casey was not properly appointed, whether Erik had the capacity to consent to Casey's receipt of the insurance proceeds. The Court of Appeals affirmed. Hood v. Jenkins, No. E2011-02749-COA-R3-CV, 2012 WL 4788636, at *1 (Tenn. Ct. App. Oct. 9, 2012). Because the order of guardianship was "woefully deficient" in that it failed to comply with the relevant guardianship statutes, and, therefore, Casey was not a properly appointed guardian, id. at *7, the Court of Appeals held that Old Line had breached its contractual duty to Erik as beneficiary of the insurance policy, did not act in good faith when it paid the insurance proceeds to Casey, and had failed in its duty to ensure that Casey was properly appointed as financial guardian, id. at *8-9. Finally, the court ruled that Erik, as a minor, "lacked the capacity to consent to the improper appointment of [Casey] as his financial guardian and her subsequent misappropriation of the insurance proceeds." Id. at *10.

We granted the application of Old Line for permission to appeal to consider whether, under these circumstances, Old Line may be held liable for the misappropriation of the insurance proceeds.

## II. Standard of Review

In a civil case heard without a jury, the trial court's findings of fact are reviewed de novo, accompanied by a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); Morrison v. Allen, 338 S.W.3d 417, 425-26 (Tenn. 2011). Questions of law, however, must be reviewed de novo with no presumption of correctness. Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 836 (Tenn. 2008) (citing Perrin v. Gaylord Entm't Co., 120 S.W.3d 823, 826 (Tenn. 2003); Ganzevoort v. Russell, 949 S.W.2d 293, 296 (Tenn. 1997)).

## III. Analysis

In the appeal to this Court, Old Line has stated the issues as follows: (1) whether it can be liable for breach of contract by relying upon a facially valid court order in the disbursement of the insurance proceeds; (2) whether there is a causal link between its actions and the subsequent misappropriation of the insurance proceeds by Casey; and (3) whether Erik, as a "mature minor," had the capacity to consent to the financial transactions. Because the first issue is determinative, we will address only whether Old Line can be held responsible for breach of contract in light of the juvenile court order appointing Casey as "financial guardian."[9]

---

[9] Although Erik had amended his complaint to assert a negligence claim and Old Line had answered the complaint by denying that it was negligent in any respect, neither party addressed the elements of negligence in their briefs to the Court of Appeals or to this Court. To the extent that Old Line has argued

(continued...)

Old Line contends that the express terms of the insurance policy only required payment of the face amount of the policy plus the required interest. Because Old Line discharged this contractual duty after receiving "due proof of [Hood's] death," it asserts that it cannot be held liable for the subsequent misappropriation of the insurance proceeds by a duly appointed guardian.

Initially, in an action for breach of contract, the rights of a third-party beneficiary "'depend upon and are measured by the terms of the contract.'" Benton v. Vanderbilt Univ., 137 S.W.3d 614, 618 (Tenn. 2004) (quoting U.S. Fid. & Guar. Co. v. Elam, 278 S.W.2d 693, 702 (Tenn. 1955)). When the terms of an insurance contract are unambiguous, it is the duty of the Court to apply the ordinary meaning of the words in the contract, and neither party is to be favored in the interpretation of the contractual language. In re Estate of Clement, 414 S.W.2d 644, 646 (Tenn. 1967); Wallace v. State Farm Mut. Auto. Ins. Co., 216 S.W.2d 697, 701 (Tenn. 1949) (citing Seay v. Ga. Life Ins. Co., 179 S.W. 312, 313 (Tenn. 1915)).

At a minimum, the terms of the insurance policy expressly required that Old Line obtain a completed claim form signed by Erik, as beneficiary, and a completed copy of the death certificate. The evidence establishes that Old Line met these requirements. The issue, however, is whether Old Line breached its contractual duty by disbursing the insurance proceeds to Casey based upon the juvenile court order appointing her as guardian over Erik's financial matters.

The proof at trial was not in material dispute. Although the insurance policy did not contain a provision relating to minor beneficiaries, the instructions in the "Proof of Death Claimant's Statement," which was to be completed by the beneficiary, provided that in the case of a minor beneficiary, "[t]he Statement [had] to be completed by the legally appointed guardian of the Estate of the minor[,] and an official certificate of the guardian's appointment [had to] be furnished." Consistent with this provision, Ms. Swanks insisted upon being provided the "guardianship papers for the finances of the minor beneficiary." After receiving the first petition and order of guardianship, she asked for documentation of the establishment of a financial guardianship. When provided with the second petition and order, which

[9](...continued)
that it was not the cause in fact or a proximate cause of the loss to Erik, both parties have framed the issue of causation in the context of damages for breach of contract. See Anderson-Gregory Co. v. Lea, 370 S.W.2d 934, 937 (Tenn. Ct. App. 1963) (citing Cent. Nat'l Ins. Co. v. Horne, 326 S.W.2d 141 (Tenn. Ct. App. 1959)) ("[D]amages for breach of contract are limited to the natural and proximate consequences thereof."). The Court of Appeals did not address any claim of negligence. The failure of the parties to specifically raise or argue the issue of negligence has resulted in waiver. See Hodge v. Craig, 382 S.W.3d 325, 334-35 & n.3 (Tenn. 2012). In any event, we need not reach the issue of causation because we have determined that Old Line was not in breach of its contract.

included handwritten interlineations, she asked the juvenile court for confirmation: a "document in writing that this Petition for 'Financial' guardianship is valid." The juvenile court then sent an "Exemplification" verifying the validity of the financial guardianship order, and Ms. Swanks issued a check to the named guardian for the benefit of the minor. Thereafter, Casey misappropriated the majority of the insurance proceeds for her personal use.

While Erik acknowledges that Old Line received documentation of Casey's appointment as financial guardian, he argues that Old Line nevertheless breached its contract by releasing the insurance proceeds to Casey because she had failed to meet certain of the statutory requirements for the creation of a proper financial guardianship. His claim is that the juvenile court's failure to assure compliance with the statutory requirements is fatal to the appointment of Casey as his financial guardian and that Old Line had the obligation to confirm that the requirements of guardianship law had been met. He specifically asserts that the guardianship petition failed to address each of the six requirements of Tennessee Code Annotated section 34-2-104 (2007).[10] Erik also complains that the order approving the

---

[10] Tennessee Code Annotated section 34-2-104 provides, in its entirety, as follows:

The petition for the appointment of a guardian, which shall be sworn, should contain the following:
  (1) The name, date of birth, residence and mailing address of the minor;
  (2) The name, age, residence and mailing address and relationship of the petitioner;
  (3) The name, age, mailing address and relationship of the proposed guardian and, if the proposed guardian is other than the petitioner, a statement signed by the proposed guardian acknowledging awareness of the petition and willingness to serve;
  (4) The name, mailing address and relationship of the closest relative or relatives of the minor and the name and mailing address of the present custodian of the minor who should be notified of the proceedings. If the respondent has no then living parent or sibling, the petition shall so state and more remote relatives are not to be listed;
  (5) An explanation of the reason for seeking appointment of a guardian; and
  (6) If the petition requests the guardian manage the property of the respondent, the petition also shall contain:
    (A) If the financial information about the minor is known to the petitioner:
      (i) A list of the property of the minor together with the approximate fair market value of each item. The petitioner shall state whether the property listed is all of the minor's property;
      (ii) A list of the source, amount and frequency of each item of income, pension, social security benefit or other revenue received by the minor;
      (iii) A list of the usual monthly expenses of the minor. The

(continued...)

-10-

guardianship lacked a property management plan as required by Tennessee Code Annotated section 34-2-105(2)(B)–(D) (2007), cited the "repealed" statute in Tennessee Code Annotated section 37-228 (1977 & Supp. 1983),[11] and waived bond despite the absence of a request for waiver, as required by Tennessee Code Annotated section 34-1-105(b) (2007) (amended 2013).

Initially, a void judgment is one that is invalid on its face because the issuing court either lacked subject matter or personal jurisdiction over the proceedings, or the judgment itself was outside of the pleadings. Gentry v. Gentry, 924 S.W.2d 678, 680 (Tenn. 1996); see also Taylor v. State, 995 S.W.2d 78, 83 (Tenn. 1999) (holding that an order or decree is only void on its face if "the [issuing] court lacked jurisdiction or authority to render the judgment"); N.Y. Cas. Co. v. Lawson, 24 S.W.2d 881, 883 (Tenn. 1930). A voidable judgment, on the other hand, is one that is facially valid and "requires proof beyond the face of the . . . judgment to demonstrate its voidableness." Dykes v. Compton, 978 S.W.2d 528, 529 (Tenn. 1998) (citing Archer v. State, 851 S.W.2d 157, 161-62 (Tenn. 1993)). The distinction between void and voidable judgments is critical as to whether a court order may be challenged directly, as in the guardianship proceeding in the juvenile court, or in a collateral proceeding, as here in the chancery court. See Lovlace v. Copley, No. M2011-00170-SC-R11-CV, 2013 WL 4773078, at *12-13 (Tenn. Sept. 6, 2013) (explaining why a final order of adoption entered by the Chancery Court for Hickman County was not subject to collateral attack in subsequent visitation proceedings in the Chancery Court for Lewis County). As our Court of Appeals has explained,

A collateral attack on a prior judgment may be successful if the judgment is void because the court rendering the judgment acted in a manner inconsistent with due process of law. But a judgment is not subject to collateral attack for mere errors or irregularities committed by the court in the exercise of its jurisdiction. Errors other than lack of jurisdiction render the

---

[10](...continued)

> petitioner shall include an explanation of how these expenditures were met prior to the filing of the petition; and
> (iv) A description of the proposed plan for the management of the minor's property if a guardian is appointed; or
> (B) If the financial information about the minor is unknown to the petitioner, a request that the court enter an order authorizing the petitioner to investigate the respondent's property.

[11] As noted, this statute had not been repealed but was an outdated version of the current version codified at Tennessee Code Annotated section 37-1-128 (2010 & Supp. 2013).

judgment merely voidable, and a voidable judgment can only be challenged on direct appeal.

Cumberland Bank v. Smith, 43 S.W.3d 908, 910 (Tenn. Ct. App. 2000) (emphasis added) (citations and internal quotation marks omitted); see also Gentry, 924 S.W.2d at 680 (citing William H. Inman, Gibson's Suits in Chancery § 228, at 219-20 (7th ed. 1988)) (agreeing that voidable court orders are valid and binding until they are either overturned by an appellate court or set aside by the issuing court).

For purposes of this proceeding, the order of financial guardianship entered by the Juvenile Court for Grainger County qualifies as a prior, final judgment that was neither appealed by the parties nor set aside by the juvenile court. Thus, it is not subject to collateral attack unless it is void on its face for lack of jurisdiction in the juvenile court to enter the order or unless the order exceeded the scope of the pleadings. If the juvenile court had jurisdiction over the subject matter and the order addressed only the terms of the petition for guardianship, the order is facially valid and cannot be attacked in this collateral proceeding. This is so even if the juvenile court committed irregularities or otherwise erred in the exercise of its jurisdiction.

The statute establishing jurisdiction over guardianships in this state provides that "[a]ctions for the appointment of a guardian of the person or property or both may be brought in a court exercising probate jurisdiction or any other court of record in the county in which there is venue." Tenn. Code Ann. § 34-2-101(a) (2007) (emphasis added). To establish proper venue, "[a]n action for the appointment of a guardian may be brought in the county of residence of the minor, the county of residence of the minor's parents or, if the minor's parents are living apart, the county of residence of the custodial parent." Id. § 34-2-101(b) (emphasis added). At the time that Casey petitioned for financial guardianship, Erik was living with her at her residence in Grainger County. Venue, therefore, was properly vested in the Juvenile Court for Grainger County.[12]

---

[12] Subject matter jurisdiction and venue are, of course, two distinct concepts, and venue generally is not a condition precedent to a court's jurisdictional power. Meighan v. U.S. Sprint Commc'ns Co., 924 S.W.2d 632, 639 (Tenn. 1996). We have considered the propriety of the venue in this context only because Tennessee Code Annotated section 34-2-101(a) vests jurisdiction over guardianship actions "in a court exercising probate jurisdiction or any other court of record in the county in which there is venue." (Emphasis added.) We do not mean to blur the well-established line between venue, which is a matter that may be waived because it is a concept of convenience, and subject matter jurisdiction, which cannot be waived because it is the basis for the authority of a particular court to act upon a particular controversy. Meighan, 924 S.W.2d at 639.

The only remaining question which might render the guardianship order void is whether the juvenile court was a "court of record." Tennessee Code Annotated section 37-1-159 explicitly provides that a "juvenile court shall be a court of record." Tenn. Code Ann. § 37-1-159(a) (2010) (emphasis added). Although the trial court expressed doubt as to whether the juvenile court had subject matter jurisdiction, the Court of Appeals properly ruled "that the order of guardianship was a facially valid court order that was signed by the juvenile court judge." Hood, 2012 WL 4788636, at *8. The Juvenile Court for Grainger County was the proper venue and qualified as a court of record. Moreover, our guardianship statutes clearly grant the juvenile court jurisdiction over actions for the appointment of a guardian for both personal and financial purposes. See Tenn. Code Ann. § 34-2-101(a). Finally, the orders entered by the juvenile court corresponded with the petitions filed by Casey requesting her appointment as guardian. In consequence, we must hold that the order of financial guardianship was a facially valid court order that is not subject to attack in this collateral proceeding.

While confirming the facial validity of the order of financial guardianship, the Court of Appeals nevertheless determined that Old Line breached the terms of its contract by disbursing the insurance proceeds to Casey because "the order did not effectively establish [her] as [Erik's] legally appointed guardian of his estate." Hood, 2012 WL 4788636, at *8 (emphasis added). The court reasoned that the "Proof of Death Claimant's Statement" required Old Line to pay the proceeds to "the legally appointed guardian of the Estate of the minor," and that Casey "was simply not the legally appointed financial guardian." Id. (emphasis altered from original). Observing that the order of financial guardianship was "woefully deficient," id. at *7, the Court of Appeals pointed out the several aspects of the order that failed to comport with the requirements of our statutes, see, e.g., Tenn. Code Ann. § 34-2-105(2)(A)–(D) (requiring the order of guardianship to set a bond, specify the nature and frequency of approved expenditures, and establish a property management plan). Based on these deficiencies, our intermediate court held that Old Line failed to act in good faith when it distributed the insurance proceeds to Casey because "[a] reasonably prudent investigation would have revealed that the order was ineffective for purposes of establishing [Casey] as [Erik's] legally appointed financial guardian." Hood, 2012 WL 4788636, at *8.

We fully agree that the order entered by the juvenile court was "woefully deficient" in terms of its substance. We further agree that the juvenile court judge failed to assure compliance with several of the statutory requirements. We cannot agree, however, that "the order . . . was not an effective order of guardianship," id. at *7, or that Old Line breached its contract by relying upon the order authorizing the disbursement of the insurance proceeds. Instead, we hold that Old Line was not only entitled to rely upon the facially valid order of financial guardianship, but that the evidence also established that, prior to payment, Old Line

-13-

acted in good faith by conducting an investigation into the adequacy of the documentation in the juvenile court judgment.

Initially, in Hawley v. Lavelle, 602 S.W.2d 499, 502 (Tenn. Ct. App. 1980), the Court of Appeals held that "there can be no claim for damages, compensatory or punitive, against parties who have acted upon the orders of a court unless the parties conspired to perpetrate a fraud upon the [c]ourt to obtain that order." In Hawley, our intermediate court confirmed that "parties have the right to act in reliance upon orders of a [c]ourt without being subject to a later claim for damages in the event the [c]ourt or its officers were in error[,] as long as the parties did not direct or ratify the wrongful acts." Id. (emphasis added); see also Tantaris v. Boehms, No. 89-178-II, 1989 WL 137853, at *6 (Tenn. Ct. App. Nov. 17, 1989) ("Persons, especially those who are not parties to a lawsuit, must be able to rely on judgments and orders of the courts of this state. . . . It should not be incumbent on one who is not a party to a lawsuit to have to search through the trial record to determine if there might be something in that record which could change an order or judgment of the trial court which is plain and unequivocal."). The holding in Hawley is entirely consistent with the well-established principle that a court order "is not subject to collateral attack for . . . errors or irregularities committed by the court in the exercise of its jurisdiction." Cumberland Bank, 43 S.W.3d at 910.

In this instance, the order of financial guardianship, despite the "errors and irregularities," qualified as facially valid. Further, the evidence does not establish that Old Line was either a party to the juvenile court proceedings or played any other role in directing or ratifying the erroneous acts of the juvenile court judge. To the contrary, Old Line acted consistently with its policy of requesting an "official certificate of the guardian's appointment" before disbursing the insurance proceeds to the guardian. Under these circumstances, we hold that Old Line did not breach its contractual duties by relying upon the facially valid order of financial guardianship.

Unlike the Court of Appeals, we also find that Old Line did not act in bad faith when it relied upon the order after confirming that a financial guardianship had been established. In Atkins v. Security Connecticut Life Insurance Co., No. 02A01-9710-CV-00257, 1998 WL 900057, at *2 (Tenn. Ct. App. Dec. 28, 1998), our Court of Appeals adopted the "good faith payment" defense, holding that an insurance company is discharged "from all subsequent liability when it makes good faith payments to a purported beneficiary without notice of any competing claims." It is only when the insurance company is aware of suspicious circumstances surrounding a claim that the company cannot rely upon the good faith payment defense unless it has conducted a "reasonably prudent investigation" to uncover the truth. Id. at *3; cf. Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc., 395 S.W.3d 653, 660-61 (Tenn. 2013) (citing Restatement (Second) of Contracts § 205 (1979)) (recognizing that

every contract includes an implied duty of good faith and fair dealing in its performance and enforcement); <u>Dick Broad.</u>, 395 S.W.3d at 668-69 (holding that a standard of reasonableness governs the performance of contractual duties). This defense has been applied in the context of automobile insurance claims, <u>see</u> <u>Snow-Koledoye v. Horace Mann Ins. Co.</u>, No. M2000-02954-COA-R3-CV, 2002 WL 225893 (Tenn. Ct. App. Feb. 14, 2002), and life insurance claims, <u>see</u> <u>Atkins</u>, 1998 WL 900057. In our view, the rationale also applies to these circumstances.

In both <u>Atkins</u> and <u>Snow-Koledoye</u>, the insurance companies were discharged from all liability under the good faith payment defense because the claims were paid in reliance upon documents that appeared to be valid. <u>Snow-Koledoye</u>, 2002 WL 225893, at *6; <u>Atkins</u>, 1998 WL 900057, at *3. In contrast, the Court of Appeals has rejected the defense for a company that paid funds in a manner inconsistent with a court order directing the manner of distribution. <u>In re Guardianship of Tatum</u>, No. W2001-00859-COA-R3-CV, 2002 WL 1751247, at *4 (Tenn. Ct. App. Feb. 4, 2002). In <u>Tatum</u>, Rosalyn Felder petitioned the probate court for guardianship of her minor daughter, who after the death of her father was the named beneficiary of funds payable by his employer, BellSouth Telecommunications, Inc. <u>Id.</u> at *1. The probate court entered an order appointing Felder as guardian and directing the guardian's attorney to exercise "joint control of the guardianship estate with the guardian." <u>Id.</u> As required by the order, the guardian's attorney notified BellSouth of the joint control provision and asked that the funds be forwarded to him for deposit in the guardianship accounts. <u>Id.</u> BellSouth, however, disregarded the request and instead sent a check payable to Felder, who subsequently misappropriated the funds. <u>Id.</u> The Court of Appeals distinguished the ruling in <u>Atkins</u> and held that BellSouth, aware of the court order requiring joint control and obliged to make "further inquiry" if it was confused as to how the funds were to be paid, acted negligently and in breach of its contract. <u>Id.</u> at *4.

In contrast to the circumstances in <u>Tatum</u>, the evidence here established that Old Line made every effort to pay the claim in a manner that was consistent with the terms of the insurance policy, the Proof of Death Claimant's Statement, and the order of financial guardianship entered by the juvenile court. Moreover, our conclusion is that Old Line conducted a reasonably prudent investigation when it made further inquiry into the circumstances of the claim. <u>See</u> <u>Tatum</u>, 2002 WL 1751247, at *4; <u>Atkins</u>, 1998 WL 900057, at *3. Prior to disbursing the insurance proceeds, Ms. Swanks first requested additional documentation in the form of Hood's death certificate and a copy of the insurance policy. When she learned that Erik was a minor, she also asked for "guardianship papers for the finances of the minor beneficiary." After concluding that the appointment of Casey as personal guardian was insufficient, Ms. Swanks specifically asked for proof of the appointment of a financial guardian. Concerned about the authenticity of the handwritten interlineations in the second order, she requested and received written confirmation from the

juvenile court, signed by the clerk and the judge, that the order establishing the financial guardianship was valid. After a review of the various documents and consultation with her supervisor, she paid the claim to Casey for the benefit of Erik. Because these undisputed facts in the record establish that Old Line acted in good faith, the evidence preponderates against any finding to the contrary.

"Persons, especially those who are not parties to a lawsuit, must be able to rely on judgments and orders of the courts of this state." Tantaris, 1989 WL 137853, at *6 (emphasis added). To hold otherwise would undermine the integrity of final judgments issued by the courts of jurisdiction. See Wilson v. Wilson, 984 S.W.2d 898, 904 (Tenn. 1998) (equating the enforcement of a court order with the integrity of the judicial process). Obviously, the Juvenile Court for Grainger County had the obligation to follow the statutory requirements for the establishment of a guardianship. Had it done so, a proper bond may have been set and the loss to Erik may have been avoided. Nevertheless, Old Line met its obligation by requiring the presentation of a facially valid judgment issued by a court of competent jurisdiction. In the absence of bad faith, justice and principles of finality are better served by enforcing a facially valid court order. See Tantaris, 1989 WL 137853, at *5; see also State v. Ritchie, 20 S.W.3d 624, 630 (Tenn. 2000) (reaffirming "the strong presumption of validity that attaches to final judgments" of courts of competent jurisdiction); Harris v. McClanahan, 79 Tenn. 181, 185 (1883) ("[I]t is the settled law of this State, deemed indispensable to that sanctity of judicial proceedings necessary for the public welfare, that [the] judgments of courts of general jurisdiction can not be collaterally attacked by evidence outside of the record itself.").

### IV. Conclusion

Because the evidence demonstrated that Old Line acted in good faith by its reliance upon the facially valid order of the Juvenile Court for Grainger County before disbursing the insurance proceeds to the guardian, it did not breach its contractual duties. The $86,842.37 judgment in favor of Erik Hood against Old Line is reversed, and the corresponding cross-claim in favor of Old Line against Casey Jenkins is vacated. Costs of this appeal are taxed to The Old Line Life Insurance Company of America and its surety, for which execution may issue if necessary.

_____

GARY R. WADE, CHIEF JUSTICE