FILED
02/15/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 15, 2017 Session

## ESTATE OF MARK BENTLEY v. WOOD BYRD, ET AL.

**Appeal from the Circuit Court for Madison County**
**No. C-08-73  Kyle Atkins, Judge[1]**

_____

**No. W2017-00446-COA-R3-CV**

_____

In this case, a judgment creditor pursued enforcement of a foreign judgment. Although the judgment creditor obtained a charging order against the judgment debtor's interest in a partnership and later moved to foreclose this interest, the judgment debtor subsequently moved to dismiss the case and vacate all prior orders by alleging that he had never been properly served. The trial court denied the motion to dismiss and entered an order allowing foreclosure against the partnership interest. Despite filings by the judgment debtor highlighting the absence of personal service, the trial court ultimately left its enforcement orders undisturbed. Because we agree that the judgment debtor never received proper service incident to the judgment creditor's attempt to enroll the foreign judgment, we vacate the trial court's orders relating to execution.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JOE G. RILEY, SP. J., joined.

Larry A. Butler and Sara E. Barnett, Jackson, Tennessee, for the appellant, Hishbach LLC a/k/a Hishbach Partners.

Russell John Johnson, Memphis, Tennessee, for the appellees, Estate of Mark Bentley.

Wood Byrd, Pro se.

## OPINION

### Background and Procedural History

---

[1] This case was initially filed in 2008. Judge Atkins was assigned the case upon taking the Circuit Court bench on September 1, 2014.

The present litigation was commenced on March 4, 2008, when Mark Bentley ("Mr. Bentley") filed a complaint in the Madison County Circuit Court under the Uniform Enforcement of Foreign Judgments Act, Tenn. Code Ann. § 26-6-101 *et seq.* In his complaint, Mr. Bentley alleged that he had previously received a monetary judgment against Wood Byrd[2] ("Mr. Byrd") in an Alabama court. The stated sum of the judgment was in the principal amount of $1,350,000.00. According to Mr. Bentley, this judgment remained fully unsatisfied, and he accordingly sought to execute on Mr. Byrd's interests in Tennessee, including, but not limited to, those interests held in "Hisbach LLC, a/k/a Hishbach LLC, a/k/a Hishbach Partners," which the complaint termed as "one of [Mr. Byrd's] companies."

After over a month had passed from the filing of his complaint, Mr. Bentley engaged in active efforts to execute on the Alabama judgment. On April 14, 2008, he moved the Circuit Court for a charging order against Mr. Byrd's interests in Hishbach Partners. In addition to requesting that Mr. Byrd's distributable interests in the partnership be paid to him as opposed to Mr. Byrd, Mr. Bentley prayed that the Circuit Court permit a foreclosure of Mr. Byrd's overall interest in Hishbach Partners should it appear that the Alabama judgment could not be satisfied within a reasonable time.

Following Mr. Bentley's request for a charging order, questions arose concerning the propriety of his attempts at execution. At the forefront of the discussion was the issue of service, or lack thereof, on Mr. Byrd. In responding to Mr. Bentley's request for a charging order, Hishbach Partners observed that pursuant to Tennessee Code Annotated section 26-6-105(c), no execution could issue until thirty days after service on the judgment debtor. *See* Tenn. Code Ann. § 26-6-105(c) ("No execution or other process for enforcement of a foreign judgment . . . shall issue until thirty (30) days after the date a summons has been served upon the judgment debtor."). Hishbach Partners also cited language in the Revised Uniform Partnership Act, which provides that "*a court having jurisdiction* may charge the transferable interest of the judgment debtor to satisfy the judgment." Tenn. Code Ann. § 61-1-504(a) (emphasis added). According to Hishbach Partners, because Mr. Byrd had never been served with process, Mr. Bentley's requested relief could not be granted.

Hishbach Partners' observations about the lack of service on Mr. Byrd were not misplaced. Although there is evidence in the record that Mr. Bentley engaged in efforts to correspond with Mr. Byrd following the filing of the complaint, the record reflects that Mr. Byrd was never properly served. Nevertheless, execution efforts proceeded. On September 2, 2008, in spite of Hishbach's proffered concerns, the Circuit Court entered a charging order with the following substantive provisions:

---

[2] At some places in the record, the judgment debtor's last name is spelled as "Bryd." It appears, however, that "Byrd" is the correct spelling.

1. The interest of Defendant [Wood Byrd] as a partner in [Hishbach Partners] . . . is subjected to an encumbrance and charging order in favor of and for the benefit of Plaintiff Mark Bentley.

2. On or before October 2, 2008, [Hishbach Partners] shall file with the clerk of this court a sworn answer reporting to the court all amounts distributable or payable to [Wood Byrd] at the time of service of this order, including all funds held for Defendant Wood Byrd, and at all subsequent times attributable to any interest owned in the partnership; and in such sworn answer and report [Hishbach Partners] shall state the value, at the time of service of this order and at all subsequent times, of both the capital and income accounts attributable to the interest of [Wood Byrd] in the partnership.

3. No Partners nor anyone on behalf of the partnership business of [Hishbach Partners] shall distribute to defendant [Wood Byrd] any funds or assets whatsoever by virtue of [Wood Byrd's] interest as a partner in or owner of an interest in the partnership, but instead shall pay over to the plaintiff Mark Bentley all funds and assets whatsoever which, by virtue of [Wood Byrd's] interest as a partner in or owner of an interest in . . . Hishbach Partners would have been distributed to [Wood Byrd] in the normal course of business of the partnership.

4. Further, should it appear that the incremental disbursements of the interest due [Wood Byrd] from Hishbach Partners cannot satisfy the judgment due Plaintiff Mark Bentley, then the interest of [Wood Byrd] in [Hishbach Partners] may be foreclosed against and sold with the proceeds applied toward the judgment due Plaintiff Mark Bentley.

The issue of service relative to Mr. Byrd was found not to be an impediment to Mr. Bentley's relief, as the Circuit Court also held in its 2008 order, there was "notice," both "actual and constructively." In reaching its conclusion on this issue, the Circuit Court reasoned as follows: "Plaintiff has made a good faith effort to serve actual notice upon Defendant at two separate residences in Alabama, a third residence in New Mexico listed for Defendant in a separate legal pleading here in Madison County, and actual service upon Hishbach Partners[.]" A few days after the entry of the charging order, Mr. Bentley filed several affidavits in the Circuit Court detailing the *attempts* made to serve Mr. Byrd. Although none of the information presented in the affidavits evidenced proper service on Mr. Byrd, the charging order was left undisturbed.

Additional efforts at execution continued in September 2014 when a motion was filed to foreclose Mr. Byrd's interest in Hishbach Partners. The motion requested that, if necessary, "Defendant Hishbach Partners commence winding up and termination of the

partnership, and the proceeds due Defendant Mr. Byrd for his interest in Hishbach be paid immediately to the Estate of Mark Bentley.[3]" The motion to foreclose was initially set to be heard on November 4, 2014, and according to an affidavit contained in the record, Mr. Byrd was served with a copy of the motion and a notice of hearing prior to that date.

The day before the originally scheduled hearing on the motion to foreclose, the Circuit Court held a telephone conference. By this time, it is clear that Mr. Byrd had become aware of the enforcement activity pursued by Mr. Bentley, as out-of-state counsel for Mr. Byrd participated in the telephone conference. During the conference, Mr. Byrd's counsel requested a continuance of the scheduled hearing on the motion to foreclose. The Circuit Court granted this request.

Subsequent to the continuance of the hearing on the motion to foreclose, both Mr. Byrd and Hishbach Partners filed motions opposing further execution efforts. On December 4, 2014, Hishbach Partners filed a motion to dismiss the case alleging that Mr. Bentley[4] had failed to serve Mr. Byrd as required by law. For his part, Mr. Byrd, acting *pro se*, filed a "Motion to Dismiss and Vacate All Prior Orders, for Failure to Join a Party Necessary and Indispensable Party." Therein, Mr. Byrd alleged that he had never been served with process and also contended that the Alabama judgment was "void." With regard to his service of process argument specifically, Mr. Byrd suggested as follows:

> The failure to obtain service o[f] process on Mr. Byrd is fatal to any proceedings and this Court has no Jurisdiction over Mr. Byrd and therefore has no power to bind Byrd to any order issued by the Court in the past nor any order issue[d] by the court [in the] present and as Mr. Byrd has not ever been made a party as required by Tennessee Law.

Because Mr. Bentley had passed away by the time foreclosure efforts were pursued in this case, steps were taken to effect a substitution of the proper party plaintiff.[5] On June 10, 2015, after certified copies of letters testamentary were filed with the Circuit Court, Mr. Bentley's estate ("the Estate") was formally substituted as the plaintiff in this action.[6] As would be expected, this substitution did not quell any disputes that existed

---

[3] Mr. Bentley had apparently passed away by the time of the filing of this motion.

[4] Although the motion referred to the plaintiff as Mr. Bentley, it acknowledged that Mr. Bentley was now deceased and that his "estate" was in the process of being substituted as a party to the action.

[5] Mr. Bentley's counsel filed a suggestion of death and a motion for substitution contemporaneous to the filing of the motion to foreclose.

[6] Although the motion for substitution had specifically requested that the personal representative of the Estate be substituted as plaintiff, the "Estate" was the party nominally substituted and several court

- 4 -

among the parties regarding the validity of the threatened foreclosure. The Estate continued to pursue foreclosure of Mr. Byrd's interest in Hishbach Partners, and the Circuit Court ultimately entered an order granting the Estate the right to foreclose this interest. Following a later foreclosure sale, title to Mr. Byrd's interest in Hishbach Partners was vested in the Estate. The concerns raised by Hishbach Partners and Mr. Byrd concerning service of process were rejected.

In its decision to dismiss the service of process arguments asserted by Mr. Byrd,[7] as well as Hishbach Partners, the Circuit Court proffered a number of explanations. In addition to concluding that Mr. Byrd had waived improper service as a defense through his counsel's participation in the November 2014 telephone conference, the Circuit Court stated that there was no basis to revisit its 2008 determination that service was effective "both actual and constructively." According to the Circuit Court, the charging order entered against Mr. Byrd's interests could have previously been appealed in 2008. Shortly after the Circuit Court rejected Mr. Byrd's service of process defense and allowed its enforcement orders to stand, the present appeal ensued.[8]

## Discussion

The briefs filed in this appeal present a number of issues for our review. As we perceive it, however, there is one dispositive issue: whether the Circuit Court had personal jurisdiction over Mr. Byrd. All other issues are pretermitted.[9]

---

filings were thereafter styled with the "Estate of Mark Bentley" in the caption. No issue has been raised about this on appeal, and we note that addressing this matter is not necessary to our disposition herein.

[7] We observe that Mr. Byrd raised the issue of improper service in multiple filings outside of his motion to dismiss, including in an affidavit and in a motion to alter or amend.

[8] At oral argument, a question arose as to whether this Court possessed jurisdiction over this appeal in light of an unresolved petition for contempt that was filed in relation to these proceedings. Typically, this Court can only exercise subject matter jurisdiction when there is a final judgment. *See Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990) (noting that appellate courts have jurisdiction over final judgments only unless an appeal from an interlocutory order is provided by the rules or by statute). Here, consistent with our previous decisions regarding contempt proceedings as "sui generis," we conclude that the unresolved contempt petition does not serve as a barrier to finality. *See, e.g.*, *Smith v. Smith*, No. W2013-02095-COA-R3-CV, 2015 WL 3971836, at *8 (Tenn. Ct. App. June 30, 2015) ("[A]n unresolved contempt petition does not affect the finality of the orders in the underlying case.").

[9] Of much dispute in this appeal is whether Hishbach Partners, the party that filed the initial appellate brief, has independent standing. This issue stems from the partnership's attempt to assert a defense on behalf of Mr. Byrd. We pretermit this matter as unnecessary to the resolution of the primary issue on appeal because Mr. Byrd has also raised the issue of whether the Circuit Court obtained personal jurisdiction over him. Namely, in response to a show cause order entered by this Court, Mr. Byrd adopted by reference the briefs of Hishbach Partners. The fact that Hishbach Partners filed the notice of

Tennessee's Uniform Enforcement of Foreign Judgments Act provides a "streamlined process" for the enrollment and enforcement of a foreign judgment. *Baumann v. Williams*, No. M2006-00962-COA-R3-CV, 2007 WL 3375365, at \*2 (Tenn. Ct. App. Nov. 13, 2007). As we have previously noted, the requirements are straightforward:

> A person desiring to file a judgment must file a copy of the judgment that has been authenticated in accordance with Tennessee law. Tenn. Code Ann. § 26-6-104(a). Along with the authenticated copy of the judgment, the person desiring to file a judgment must also file an affidavit containing the names and last known addresses of the judgment creditor and the judgment debtor. Tenn. Code Ann.§ 26-6-105(a). Once these documents are filed, the clerk of the court in which they were filed must issue a summons to the judgment debtor. Tenn. Code Ann. § 26-6-105(b). If the judgment debtor makes no response *after being served*, the judgment creditor may, after waiting thirty days, simply enforce the judgment by execution or other means. Tenn. Code Ann. § 26-6-105(c).

*Id.* (emphasis added).

As is clear, service on the judgment debtor plays a key role in the statutory requirements. The statute unequivocally provides that no execution or other enforcement action is allowed until thirty days after a summons has been served on the judgment debtor. Tenn. Code Ann. § 26-6-105(c). This requirement is important because it allows the judgment debtor to "appear and show why enforcement of the judgment should be stayed." *Bailey v. Sneed*, 49 S.W.3d 327, 328 (Tenn. Ct. App. 2001) (citations omitted). Although parties seeking to undermine the validity of a foreign judgment will certainly have a "stern and heavy" burden, foreign judgments "are subject to the same defenses and may be vacated or reopened on the same grounds and procedures used to vacate or reopen Tennessee judgments." *Biogen Distribs., Inc. v. Tanner*, 842 S.W.2d 253, 256 (Tenn. Ct. App. 1992) (citations omitted); *see also* Tenn. Code Ann. § 26-6-104(c) ("A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a court of record of this state and may be enforced or satisfied in like manner.").

Through his adoption of the arguments in Hishbach Partners' briefs, Mr. Byrd has argued that because he was never served, the actions taken by the Circuit Court are void. We find merit in his position. Although summonses are typically excluded from the

---

appeal, as opposed to Mr. Byrd, is of no ultimate consequence. When the partnership filed a timely notice of appeal, this dispensed with any need for Mr. Byrd to file a separate notice of appeal to preserve any issues. *See* Tenn. R. App. P. 13(a) ("[A]ny question of law may be brought up for review and relief by any party. Cross-appeals, separate appeals, and separate applications for permission to appeal are not required.").

appellate record pursuant to Rule 24 of the Tennessee Rules of Appellate Procedure, the Circuit Court supplemented the record in this case with all summonses that were issued and returned. Upon our review of the information provided in the supplemental record, we find no indication that Mr. Byrd was ever properly served with a summons as directed by Tennessee Code Annotated section 26-6-105. Proper service of process is the very essence of due process. Given the absence of service on Mr. Byrd, no execution should have issued. *See* Tenn. Code Ann. § 26-6-105(c) ("No execution or other process for enforcement of a foreign judgment filed hereunder shall issue until thirty (30) days after the date a summons has been served upon the judgment debtor.").

Presumably in light of what the record shows on the issue, the Estate's brief appears devoid of any argument that Mr. Byrd was ever properly served with a summons as directed under the statute. Nevertheless, in defense of its execution efforts against Mr. Byrd, the Estate relies on the trial court's finding that Mr. Byrd waived improper service as a defense. Specifically, the Estate argues that Mr. Byrd waived his right to object to personal jurisdiction by virtue of the fact that out-of-state counsel representing him participated in a November 2014 telephone conference. We do not find merit in this argument. As far as the record will admit, Mr. Byrd's counsel simply asked for a continuance of the hearing on the motion to foreclose during the telephone conference. Consistent with prior precedent, we do not consider this action to result in a waiver of personal jurisdiction or Mr. Byrd's defense pertaining to service of process. *See Landers v. Jones*, 872 S.W.2d 674, 677 (Tenn. 1994) ("[W]e are simply unable to conclude that a joint motion for continuance constitutes a waiver of the right to raise personal jurisdiction[.]"). Moreover, when court filings were subsequently submitted by Mr. Byrd, he repeatedly raised the fact that he had never been served.

In addition to placing significance on Mr. Byrd's counsel's participation in the November 2014 telephone conference, the Circuit Court appeared to suggest in one of its orders that Mr. Byrd should have appealed the service issue after entry of the 2008 charging order. Even assuming that the 2008 charging order was a final order from which an appeal could have been taken,[10] we reject the notion that Mr. Byrd was

---

[10] There does not appear to be a wide body of Tennessee law addressing when a charging order should be considered a final order for purposes of appeal. In dealing with the issue, the parties cite to *Rogers Group, Inc. v. Gilbert*, No. M2015-01044-COA-R3-CV, 2016 WL 2605651 (Tenn. Ct. App. May 3, 2016), in which this Court reviewed an attempted appeal of a charging order subjecting the debtor's interest in a limited liability company. In that case, we observed that our research had found no Tennessee decisions addressing the issue of when a charging order should be considered final. *Id.* at *2. In ultimately concluding that the charging order appealed from was not final, however, we observed that there were "matters left for the parties and the court to accomplish." *Id.* at *4. We noted, for example, that the charging order under review directed the limited liability company to file an answer "reporting to the Court all amounts distributable or payable to Defendant at the time of service" of the order. *Id.* at *3-4. In this case, it has been suggested that the 2008 charging order was not final because it left open the issue of whether there would be a future foreclosure of Mr. Byrd's interest in Hishbach Partners. Regardless of that particular consideration as evidence of non-finality, we observe that the 2008 charging

definitively bound by the execution efforts against him. Mr. Byrd had never been served at the time of the entry of the charging order, and personal jurisdiction had never been acquired over him. As such, the charging order was void. *See Hood v. Jenkins*, 432 S.W.3d 814, 825 (Tenn. 2013) (stating that a judgment is void if the issuing court lacked personal jurisdiction over the proceedings). Whereas a voidable judgment can only be challenged on direct appeal, *Cumberland Bank v. Smith*, 43 S.W.3d 908, 910 (Tenn. Ct. App. 2000) (citations omitted), a void judgment is subject to attack at any time. *See Pittman v. Pittman*, Nos. 01-A-01-9301-CH00014, 87-077, 1994 WL 456348, at \*2 (Tenn. Ct. App. Aug. 24, 1994). A direct appeal was simply not necessary in 2008 even assuming a final order existed.

In summary, the record is devoid of any evidence of service on the judgment debtor. Establishing such service is a prerequisite to execution and allows the judgment debtor an opportunity to appear and assert any defenses that may exist in connection with enforcement of the foreign judgment. Here, this procedure was not followed, and Mr. Byrd has not engaged in any actions which should be deemed a waiver of service. We therefore conclude that the Circuit Court's orders allowing execution against Mr. Byrd's interests should be vacated. Any future efforts at execution must be preceded by service on Mr. Byrd as required by Tennessee Code Annotated section 26-6-105.

## Conclusion

In light of the foregoing, the Circuit Court's orders relating to execution are hereby vacated. Costs of this appeal are assessed one-half against Hishbach Partners, and its surety, and one-half against the Estate of Mark Bentley, for all of which execution may issue if necessary. This case is remanded for the collection of costs, enforcement of the judgment, and for such further proceedings as may be necessary and consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE

---

order shared a similar feature with the *Gilbert* charging order by requiring the partnership to file a sworn answer with the clerk reporting all amounts distributable or payable to Mr. Byrd. Under the reasoning of *Gilbert*, this indicates that the 2008 charging order was not final at the time of its entry.

- 8 -